**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

FILED

|  |  |
|---|---|
| CARLEEN AHERN | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| TRANS UNION LLC | ) |
| | ) |
| Defendant. | ) |

ZЗ OCT 17  A II: 10

US DISTRICT COURT
HARTFORD CT

C.A. No: 3:01cv02313 (DJS)

## SECOND AMENDED TRIAL MEMORANDUM

**1.    TRIAL COUNSEL**

For the plaintiff:
Joanne S. Faulkner
123 Avon Street
New Haven, Connecticut 06511
(203) 772-0395


For the defendant:
BRUCE S. LUCKMAN {CT.# 10830}
SATZBERG, TRICHON
    & KOGAN, P.C.
1818 Market Street, 30th floor
Philadelphia, PA  19103
(215)  575-7600/fax 215-575-7688

**2.    JURISDICTION**

This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over plaintiff's

claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681p, and supplemental jurisdiction

pursuant to 28 U.S.C. § 1367 over plaintiff's pendent state claims.

**3.    JURY/NON-JURY**

This case is to be tried to a jury.

**4.    LENGTH OF TRIAL**

Counsel for the parties estimate 1-2 trial days.

1

5.    **FURTHER PROCEEDINGS**

**Plaintiff's Further Proceedings**

Determination of objection to witnesses and objections to evidence as per attachments and memoranda previously filed.

**Defendant's Further Proceedings**

See Anticipated Evidentiary Problems, Section 11, *infra*.

6.    **NATURE OF THE CASE**

**Plaintiff's Statement:**

Trans Union violated nearly every applicable Fair Credit Reporting Act (FCRA) reinvestigation obligation established by Congress in 1996 under 15 U.S.C. §1681i(a), as well as those established under parallel state law, Conn. Gen. Stat. §36a-699b, -c, -e. Plaintiff's social security number was stolen and used by an impostor. With full knowledge of the "identity theft," Trans Union continued to combine the impostor's bad credit with plaintiff's good credit, based on the impostor's use of plaintiff's social security number. Other than the same social security number, plaintiff (Carleen Ahern) and the impostor (Carline Coleman) had different names, different months of birth, and lived in different Connecticut towns. They had separate credit reports. Ms. Coleman had only adverse entries (referred to as tradelines[1]) on her report; the plaintiff's report was good except for the Coleman tradelines which Trans Union should not have included in plaintiff's report.  Trans Union put a "fraud alert" it put on plaintiff's own file in 1996, and included the flag "True Name Fraud or Credit Fraud" in 1999. Yet Trans Union rejected plaintiff's claim that she is not Ms. Coleman and that Ms. Coleman's information should be removed from plaintiff's credit file. In particular, after verifying that a disputed Zale account belonged to Coleman, not Ahern, Trans Union's Fraud Unit  retained it on plaintiff's credit file rather than transfer it to Coleman's.

Defendant violated the FCRA (1) by failing to comply with its timing and procedural

---

[1] A tradeline is "Any credit account such as a bank loan, credit card, or mortgage" according to defendant's Web site, www.transuion.com.

obligations to conduct a reasonable reinvestigation after plaintiff's dispute notice, (2) by willfully retaining the disputed Zale account on plaintiff's credit report despite overwhelming corroboration that it was not hers, (3) by sending plaintiff a copy of the imposter's credit report, (4) by disclosing plaintiff's credit file to persons with no permissible purpose, and (5) by combining plaintiff's file with information from Carline Coleman's file after the fraud alerts, and thus not following reasonable procedures to assure maximum possible accuracy of the information about plaintiff when it prepared plaintiff's consumer report.

Magistrate Judge Smith implicitly found that Trans Union had violated the FCRA in the respects urged by plaintiff, leaving only (1) whether Trans Union acted willfully and (2) whether Trans Union conceals from consumers that it only cloaks disputed accounts yet tells consumers that they were deleted.

Plaintiff seeks actual damages, statutory damages, punitive damages, costs, and attorney's fees.

**Defendant's Statement:**

Trans Union is a consumer reporting agency as defined by the FCRA. Plaintiff claims that Trans Union violated the FCRA by negligently reporting (§1681e(b)) and later reinvestigating (§1681i) a fraudulent "Zale" account on her credit report. Plaintiff's instant counsel made a single dispute to Trans Union regarding the content of plaintiff's Trans Union report in or about October 2001. While there were other derogatory accounts on plaintiff's file, the complaint in the instant action concerns the Zale account only. (The other accounts were deleted by Trans Union after her single dispute. Those other creditors are defendants in the related action, Ahern v. Equifax, Capital One, Cross Country Bank, First Union Bank and Associates Bank, (No. 01-CV-2309), pending before Judge Eginton.)

Plaintiff also claims that Trans Union furnished information to credit grantors,

including Chase Manhattan Bank, "even though none had a permissible purpose."
(Complaint, para. 11)  This allegation is most curious because plaintiff's sole actual damages
claim is that: "Denials include 'Toys'R'Us' Visa Gold Card from **Chase** in June 2000. (See
Plaintiff's Answer to Trans Union's Interrogatory, No. 11.)(For the reasons set forth below,
this pre-dispute claim is legally defective as well.)  Plaintiff denies medical treatment.  (See
Plaintiff's Answer to Interrogatory 15)

   Finally, plaintiff also claims that she is entitled to punitive damages because
Trans Union's "conduct was wilful."  Complaint, paragraph 20.  Plaintiff has not deposed a
single Trans Union witness.  Plaintiff has not presented any evidence of willfulness and relies
almost entirely upon attorney argument and characterization of Trans Union's manuals.
Plaintiff's FCRA claims fail because she cannot prove the elements of her claims.

  FCRA requires consumer reporting agencies "to follow reasonable procedures to
assure maximum possible accuracy of the information concerning the individual about whom
the report relates."  The FCRA, however, is not a strict liability statute. Cahlin, *supra* 936
F.2d at 1156.   The reporting of inaccurate information alone does not establish a claim.  The
elements of a negligent §1681e(b) claim are well-established:

> (1) the consumer reporting agency was negligent in that it failed
> to follow reasonable procedures to assure the accuracy of its
> credit report; (2) the consumer reporting agency reported
> inaccurate information about the plaintiff;   **(3) the plaintiff
> was injured; and (4) the consumer reporting agency's
> negligence proximately caused the plaintiff's injury.** Whelan
> v. Trans Union Corp., 862 F. Supp. 24, 829 (E.D.NY 1994)
> (emphasis supplied)*See also* Philbin v. Trans Union Corp., 101
> F.3d 957, 963 (3rd Cir. 1996); Cahlin v. General Motors
> Acceptance Corp., 936 F.2d 1151, 1160-1161 (11th Cir. 1991).

Plaintiff cannot meet her burden of proof on any of these elements.  Plaintiff

has not identified a credit grantor witness which was furnished an allegedly inaccurate Trans Union report, or a person competent to testify that such a report was used in a credit eligibility determination. Thus, plaintiff cannot prove the second, third or fourth (causation) elements of an FCRA §1681e(b) claim.

Plaintiff is also unable to meet the first element because Trans Union is entitled to report information from reliable sources, at least until Trans Union had notice from Plaintiff that she disputed the accuracy of the entry. Casella v. Equifax Credit Reporting Services, 56 F.3d 469, 474 (2nd Cir. 1995), cert denied 116 S.Ct. 1452, 134 L.Ed.2d 571 (1996)(See also, Podell v. Citicorp Diners Club, 112 F.3d 98, 105 (2nd Cir. 1997) and Whelan v. Trans Union Credit Reporting Agency, 826 F.Supp. 824, 830 (E.D.N.Y. 1994) Because plaintiff's consumer report was not furnished to a third party after her single dispute, no FCRA §1681e(b) cause of action can be established.[2]

Plaintiff's second claim is that Trans Union failed to perform reasonable reinvestigation of her dispute of the Zale's account. Plaintiff's attorney made a single dispute to Trans Union on October 19, 2001, **fifteen months** after Trans Union sent plaintiff the July 19, 2000 copy of her report. The dispute referenced several accounts, four of which were on plaintiff's file: ANBCC, Capital 1 Bank and FUNB Recovery and the Zale Account. (The July 19, 2000 disclosure contained the ANBCC, Capital 1 Bank and FUNB Recovery tradelines, but not the Zale Account.) It is not clear why plaintiff's attorney disputed the Zale account which was not on plaintiff's file. It is not disputed that Trans Union responded to plaintiff's dispute by deleting three of the tradelines and verifying the fourth, the Zale

---

[2]    Plaintiff's actual damages claim is the confused assertion that she was denied a Visa Card by Chase in June 2000. This claim fails for two reasons. First, it is entirely inconsistent with the allegation of her complaint that Chase did not have a "permissible purpose" to review her consumer report. (Complaint, para. 11) As such, she cannot claim that the denial of an application which she did not make caused her harm. (After the lawsuit, and in reliance upon that allegation, Trans Union deleted the Chase inquiry from plaintiff's Trans Union file.) Second, she failed to demonstrate why the application was allegedly denied.

Account.     Trans Union thereafter sent plaintiff the November 9, 2001 disclosure which provided her the results of the reinvestigation and all of her FCRA rights.  As such, Trans Union complied fully with its FCRA §1681i obligations.  <u>Podell v. Citicorp Diner's Club, Trans Union, et al.</u>, 112 F.3d 98, 100 (2nd Cir. 1997)

Plaintiff has essentially manufactured a contention that Trans Union's procedure of "cloaking," instead of "deleting" accounts, violates FCRA §1681i.  Cloaking is Trans Union's internal nomenclature to describe the FCRA required process by which a disputed account is permanently removed from reporting to the consumer or any third party, but remains suppressed in the database. To the world outside Trans Union, the disputed account is permanently deleted.  As explained in Trans Union's manuals  "Cloaking prevents items from reappearing on the file in the event that *subscribers* fail to correct their automated tapes." (Emphasis supplied.)  FCRA §1681i(a)(5)(C) requires consumer reporting agencies to maintain reasonable procedures to prevent the reappearance of information deleted pursuant to §1681i(a)(5).  "Cloaking" was 100% effective with respect to all accounts deleted from Plaintiff's file.  The procedure effectively prevents the account from being re-reported because the suppression process traps subsequent reporting by the credit grantor.  (Often a credit grantor will not remove the disputed account from its monthly automated tapes furnished to Trans Union; the cloak suppression defeats the subsequent tapes.  FCRA §1681i)

Here, the contention related to "cloaking" makes little sense because she does not allege that any accounts were deleted and later re-appeared in her Trans Union report (and it is undisputed they **did not**).

While Plaintiff fails to connect any compensatory damages to her claims, she seeks statutory damages of $100.00 to $1,000.00 because she claims Trans Union acted willfully and deliberately to violate her rights.  Plaintiff did not retain an expert or depose a Trans Union witness to support these claims. Because Trans Union followed its procedures and deleted three of the four disputed accounts and never reported (or rereported) the Zale

6

account after the single dispute, plaintiff cannot meet even the most generous definition of punitive damages and cannot present evidence sufficient to go to the jury on her willfulness or punitive damages claims. See Casella, *supra* 56 F.3d at 476; Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001), *cert denied*; and Philbin v. Trans Union Corporation et al., 101 F.3d 957, 970 (3rd Cir. 1996)

On March 4, 2003, Magistrate Judge Smith denied summary judgment and identified two issues[3] which remain for trial: 1) "whether `cloaking' is `deleting' as defendant asserts, or whether, as plaintiff asserts, `cloaking' and `deleting' are different;" and 2) "whether defendant acted willfully and deliberately to violate plaintiff's rights." See defendant's Trial Mem. at 2-5, Doc. No. 69.

## 7.    **TRIAL BY MAGISTRATE JUDGE**

The parties have not agreed to a trial by a Magistrate Judge.

## 8.    **LIST OF WITNESSES**

**Plaintiff's Witnesses**

Carleen Ahern, 15 Schweky Court, Wallingford CT (one hour)

Ms. Ahern will testify to the background of the theft of her identity by one Carline Coleman of Hartford CT; her repeated efforts to correct her Trans Union credit file over the years; the inclusion of fraud alerts on her credit file by Trans Union; the disclosure of her credit report to persons who did not have any permissible purpose; her expenses, damages and emotional distress resulting from Trans Union's actions.

Richard Capobianco or other representative of The Credit Bureau of Connecticut CBCT),

600 Saw Mill Rd West Haven CT 06516 (3/4 hour)

The CBCT witness will testify to the relationship of CBCT with Trans Union and CBCT's assigned responsibility to process consumer disputes for residents of Connecticut in and before 1999, as well as any activity with regard to plaintiff's credit file.

---

[3] The Order suggests "many issues""exist," but these are the only two which were identified.

Frank Blois, 15 Schweky Court, Wallingford CT (.3 hour)

Plaintiff's husband will testify to the plaintiff's emotional distress resulting from Trans Union's actions.

Catherine Ahern (address) (.3 hour)

Plaintiff's mother will testify to her emotional distress resulting from Trans Union's actions.

Katherine Ahern (address) (.3 hour)

Plaintiff's sister will testify to her emotional distress resulting from Trans Union's actions.

Maryann Mecca - 150 Tunxis Village, Farmington, CT 06032 (.3 hour)

Ms. Mecca, a co-worker, will testify to her emotional distress resulting from Trans Union's actions;

Kelly Bonito - 351 Woodhouse Ave, Wallingford, CT 06492 (.3 hour)

Ms. Bonita, a cousin, will testify to her emotional distress resulting from Trans Union's actions.

(To be identified) One or more co-workers (depending on availability) will testify to plaintiff's emotional distress resulting from Trans Union's actions. (.3 hour each)

Luckman or witnesses identified by Trans Union

(To authenticate documents in the event defendant does not stipulate to the content of Trans Union's consumer files disclosed to plaintiff and others, and communications between plaintiff and Trans Union; to testify to facts of the investigation in the event defendant does not stipulate thereto)

**Defendant's Witnesses**

    1.    Diane Terry, Director
        Western Region, Consumer Relations
         and Fraud Victim Assistant Departments
        Trans Union, Fullerton, California

Ms. Terry is expected to testify with respect to the history and operations of Trans Union's consumer relations system and database and the receipt and processing of information from customers, the Fraud Victims Assistance Department ("FVAD"), the content of Trans Union's consumer file regarding plaintiff; communications between plaintiff and Trans Union; and Trans Union and credit grantors concerning plaintiff. She is also expected to testify with respect to Trans Union's dispute, reinvestigation and information maintenance procedures and to generally describe Trans Union's database. Her direct examination will be approximately 2.50 hours.

2.      Steven Reger, Group Manager
        Western Region, Consumer Relations
           and Fraud Victim Assistant Departments
        Trans Union, Fullerton, California

        Mr. Reger may be called to testify with respect to some or all of the issues described in 1 above. His direct examination will be one hour.

3.      Lynn Romanowski, Senior Analyst
        Trans Union, Chicago, Illinois

        Ms. Romanowski is expected to testify with respect to Trans Union's database and the means by which information is received and processed. Her direct examination is expected to be 1.5 hours.

4.      Keith McCawley, Trans Union, Marketing Services, Chicago, IL.

        Mr. McCawley is expected to testify with respect to the information furnished by Trans Union to plaintiff's existing credit grantors and Trilegiant in connection with account reviews and other inquiries; the form and manner in which Trans Union subscribers request and are furnished information. His direct examination is expected to be one hour.

5.      Wesley Kemmerlin, VP: Credit Risk Officer, Bank of America, NC1-022-03-02, IJL Building, 201 N. Tryon Street, Charlotte, NC 28255

        Mr. Kemmerlin is expected to testify via deposition transcript with respect to the information furnished by Trans Union to Bank of America in connection with account reviews conducted; the form and manner in which Bank of America requested and was furnished information; and the manner in which the information was used. His direct examination via transcript is expected to be one-half hour.

6.      Elizabeth Sheehan, or other cognizant and available witness,

TRILEGIANT CORP., 100 Connecticut Ave., Norwalk, CT 06850

Ms. Sheehan, or other appropriate witness is expected to testify with respect to the information furnished by Trans Union to Trilegiant/Cendant ("Privacy Guard") in connection with reviews conducted; the form and manner in which Trilegiant requested and was furnished information; and the manner in which the information was used. Her/his direct examination is expected to be one-half hour.

7.    Joanne Faulkner, Esquire

Ms. Faulkner is expected to be called as of cross-examination to testify regarding the circumstances the preparation of her dispute letter to Trans Union which contained a dispute of information which was not contained in the file furnished to plaintiff. Her cross-examination is expected to be less than one hour.

## 9.    PLAINTIFF'S EXHIBITS

1. Certified copy of State Trooper investigation re Coleman

2. CBCT letter of 1996

3. CBCT letters of 1999

4. July 6, 1999 TU report

5. Transcript of CBCT testimony July 17 2000

6. TU Consumer relations request display screen (same as TU-2)

7. July 19, 2000 TU disclosure to plaintiff (same as TU-5)

8. October 2001 dispute letter (same as TU-6)

9. TU Supp. response to Int. 5

10. TU response to Int. 19

11. TU response to Adm. 20

12. Oct. 19 File Correction Work Order

13. Oct. 29, 2001 TU internal disclosures for investigations for Ahern & Coleman with handwriting

14. Nov. 8 Telephone Verification form

15. Nov. 9 2001 TU consumer disclosure of plaintiff (same as TU-14)

16. Nov. 9 2001 TU consumer disclosure of Coleman (same as TU-15)

17. TU Policy Manual, page entitled Cloaking

18. TU ACDV to FUNB

19. Plaintiff's TU credit disclosure August 5, 2002

20. Plaintiff's TU credit disclosure August 19, 2002

21. AP article Thomas v. Trans Union July 30, 2002

22. TU consent order with FTC (1992)

23. TU consent order with CT AG (1992)

24. TU's Response to Interrogatory No. 21.

**Plaintiff requests the Court to take judicial notice of Trans Union's pattern and practice of violating the FCRA's investigation requirements (Pl. Proposed Jury Instr. No. 21)**

## DEFENDANT'S EXHIBITS

| | |
|---|---|
| Trans Union -1 | Consumer relations system history search summary; |
| Trans Union -2 | consumer relations system consumer request display computer screen print dated July 19, 2000; |
| Trans Union -3 | consumer relations system comment display and entry computer screen print dated July 19, 2000; |
| Trans Union-4 | consumer relations system consumer personal information computer screen print [July 19, 2000]; |
| Trans Union-5 | July 19, 2000 Trans Union consumer file disclosure of Carleen Mary Ahern; |
| Trans Union-6 | Ms. Faulkner's October 21, 2001 letter to Trans Union |
| Trans Union-7 | File correction work order and October 29, 2001 internal disclosure for Carleen Ahern, with notes; |
| Trans Union-8 | consumer relations system consumer request display computer screen print dated October 29, 2001; |

Trans Union-9          consumer relations system personal information and employment information computer screen prints [November 9, 2001];

Trans Union-10          consumer relations system trade set detail and expanded trade set detail screen prints re: FUNB Recovery - November 9, 2001;

Trans Union-11          consumer relations system trade set detail and expanded trade set detail screen prints re: Zale Out/HSB dated November 9, 2001;

Trans Union-12          consumer relation system trade set detail and expanded trade set detail screen prints re: ANBCC dated November 9, 2001;

Trans Union-13          consumer relation system trade set detail and expanded trade set detail screen prints re: Capital 1 Bk dated November 9, 2001;

Trans Union-14          consumer relation system trade set detail and expanded trade set detail screen prints re: FUNB Recovery dated November 9, 2001;

Trans Union-15          November 9, 2001 Trans Union consumer file disclosure of Carleen Mary Ahern;

Trans Union-16          November 9, 2001 Trans Union consumer file disclosure of Carline Coleman.

Trans Union-17          Trans Union produced its Fraud Victims Assistance Department ("FVAD") Standard Operating Procedures

Trans Union-18          Trans Union Training and Reference Manual

Trans Union - 19          Understanding CRONUS presentation

Trans Union – 20          Trans Union job folder documents containing data layout and respecting Bank of America

Trans Union – 21          Trans Union job folder documents containing data layout and respecting Trilegiant/Cendant's review of plaintiff's file

Trans Union – 22          Designated Portions of Deposition of Bank of America/Wesley Kemmerlin (To be designated upon receipt of transcript)

Trans Union – 23          Current Disclosure for Plaintiff

10    **STIPULATION OF UNCONTESTED FACTS**

1.    Plaintiff is a consumer within the meaning of the FCRA. § 1681 a(c).

2.    Trans Union is a consumer reporting agency within the meaning of the FCRA.

§ 1681 a(f).

3.    On July 19, 2000, at plaintiff's request, Trans Union furnished plaintiff a free copy of

her credit file ("disclosure") because Ms. Ahern stated that person who used her info is now

in jail for the second time and Ms. Ahern requested a copy of the credit report to dispute

fraud accounts.

4.    The July 19, 2000, report did not contain the disputed Zale account.

5.    The July 19, 2000, report included two statements regarding credit fraud which were

inserted before July 19, 2000. One of the fraud statements is dated 11/96.

6.    Trans Union received a letter from Joanne S. Faulkner, Esq., dated October 20, 2001,

which was received at Trans Union's consumer relations office in Crum Lynne, PA on

October 19, 2001, and mailed it to FVAD, which received it on October 24, 2001.

7.    On October 29, 2001, Nadia Reynaga, Consumer Contact Representative, operator no.

C7191 pulled internal disclosures for reinvestigation.

8.    The internal copy of plaintiff's credit information included a statement: FRAUD

VICTIM; DO NOT EXTEND CREDIT WITHOUT FIRST CONTACTING ME

PERSONALLY AND VERIFYING ALL APPLICANT INFORMATION . . . CONSUMER

DISPUTES ALL INQUIRIES; STATES THEY ARE FRAUD INQUIRIES.

9.    The internal copy of plaintiff's credit report also included a special message:

CONSUMER STATEMENT ON FILE RELATES TO TRUE NAME FRAUD OR CREDIT

FRAUD.

10.     On November 9, 2001, Sarah Maestrejuan, Consumer Contact Representative,
operator no. C4082, reviewed the October 19, 2001 letter and the October 29, 2001 internal
disclosures. Ms. Maestrejuan wrote the comments which appear on the disclosures at that
time, except for the comments relating to the Zale account. The comment "PC" on the
disclosure is 'per consumer'.

11.     As of October 29, 2001, the most recent information furnished by Zale OUT/HSB to
Trans Union was that the Zale account had been opened in 08/1999, and had been charged
off and closed in 08/2000

12.     On November 9, 2001, the letter and disclosures were given to Mark Clemente,
Verifier, operator no. C4488. Mr. Clemente called Zale Outlet/Hurley State Bank (800) 767-
9103 and spoke to Sheila. Mr. Clemente wrote the information shown on a telephone
verification.

13.     Thereafter, on November 9, 2001, the letter, disclosures, and telephone verification
were returned to Ms. Maestrejuan, who wrote the comments next to the Zale account as
shown on the internal disclosure. "VTR" means Verified To Remain; "1F" means same first
name; "1L" means same last name; "5" means same Social Security Number.

14.     Thereafter, on November 9, 2001, Trans Union determined that the Zale account
(tradeline) should remain on plaintiff's credit file, and that the tradelines for Capital 1 Bank
and ANBCC should be cloaked.

15.     On November 9, 2001, Trans Union determined that the FUNB Recovery tradeline
should be cloaked on plaintiff's credit file.

16.     On November 9, 2001, Trans Union mailed plaintiff a copy of her report.

17.     Trans Union informed Ms. Ahern that the tradelines for ANBCC, Capital 1 Bank and
FUNB were deleted and that the Zale account was not deleted.

18.   The Zale account was deleted on January 29, 2002.

19.   The Hartford address and telephone number were removed from Ms. Ahern's credit

file on August 19, 2002.

20.   On November 9, 2001, Trans Union sent Ms. Ahern's a copy of her consumer

disclosure showing that the Zale Account was not deleted and that the Capital 1 Bank,

ANBCC and FUNB Recovery accounts were deleted.

21.   This action was filed on December 11, 2001.

**10.    AGREED STATEMENT OF CONTESTED ISSUES OF FACT AND LAW**

Whether cloaking is deleting

Whether defendant disclosed plaintiff's credit file to those without a permissible purpose

Whether defendant acted willfully within the FCRA.

Whether plaintiff suffered any cognizable harm

Whether Trans Union complied with the FCRA

Whether Trans Union negligently violated the FCRA

Whether Plaintiff communicated a dispute to Trans Union before October 2001

**B.    PROPOSED VOIR DIRE QUESTIONS**

1.    **Plaintiff's Proposed Voir Dire Questions** are attached

2.    Defendant's proposed Voir Dire questions are attached.

**C.    PROPOSED JURY INSTRUCTIONS**

1. PLAINTIFF'S requests for Jury Instructions are attached to Doc. No. 69.

2. DEFENDANT'S proposed Jury Instructions are attached to Doc. No. 69.

**11. Anticipated Evidentiary problems:**

A. <u>Plaintiff</u> objects to the proposed Trans Union witnesses for lack of personal knowledge, for failure to identify two of them as persons with knowledge, and for their proposed testimony to the extent it appears unrelated to any party's claims or defenses.

Plaintiff objects to proposed Trans Union exhibits to the extent defendant has refused to respond to discovery as to those exhibits. For instance, Romanowski is expected to testify to Online Combine and Unify rules, but defendant objected to Interrogatory 18, asking those very questions, as "wholly irrelevant."

Plaintiff objects to disclosure of her current credit report to the court or the jury, neither of whom has a permissible purpose for receiving it.

Plaintiff objects to defendant's proposal to call her counsel as witness for lack of good cause or personal knowledge other than what was involved in attorney client communications.

Plaintiff objects to proposed documents which defendant refused to translate in response to discovery requests.

In addition to Memo filed at Doc No. 93. Defendant lists as an additional witness Keith McCawley, despite the fact that its motion to add him as a witness was NOT granted (Endorsement, Doc. No. 96). Had the Court granted that aspect of Trans Union's the Motion it would have allowed plaintiff the opportunity to conduct discovery of the newly identified witness. Defendant proposes new Exhibits 20, 21 in connection with McCawley's testimony, which are inscrutable and which it did not provide to plaintiff until September 12, 2003. Defendant did not conduct the third party discovery it was permitted to conduct pursuant to the Order (Endorsement, Doc. No. 96) (third parties which received plaintiff's credit information in connection with an application for credit or insurance). Instead, it attempted to conduct discovery of other third parties, and lists those third parties as Witnesses 5 and 6. Defendant's deposition of its Witness 5 excused the Witness, on the record, from producing the credit information defendant had subpoenaed, intentionally depriving plaintiff of the chance to examine the documents and witness. See excerpts, attached to Doc. No. Defendant did not conduct a deposition of Witness 6 but has apparently informally elicited her probable testimony without allowing plaintiff the opportunity to ascertain in a fair manner what the Witness would say. Since it did not comply with any of the conditions of the Order (Endorsement, Doc. No. 96), defendant's new witnesses and documents should be rejected.

B. <u>Trans Union</u> anticipates the following Evidentiary Problems:

(A)    Trans Union anticipates that plaintiff will attempt to testify that she was denied credit and why such credit was denied. Such testimony is inadmissible hearsay. <u>Philbin v. Trans Union Corp.</u>, 101 F.3d 957, 961, fn. 1 (3rd Cir. 1996); Federal Rule of Evidence 801and 802 **(No documents or witnesses identified)**

(B)    Plaintiff    should    be    precluded    from    presenting

documents, testimony, or witnesses relating to damages which occurred before the date plaintiff disputed the Zale account to Trans Union. It is not disputed that Trans Union was *not* notified that plaintiff disputed the Zale account until October 2001. Therefore, documents and evidence relating to transactions or events which allegedly occurred prior to that date are irrelevant and should be barred at trial. (See discussion of Casella and Whelan, *supra*) Also, such testimony is hearsay, irrelevant and likely to only confuse the jury. Federal Rules of Evidence 401, 402, 403, 801 and 802. **(No documents or witnesses identified)**

(C)     Plaintiff should be precluded from testifying that she was either upset by her review of a disclosure report which Trans Union was required to furnish to her; that she was denied credit opportunities; or that she was afraid to apply for credit. Casella, *supra*, and McMillan v. Experian, 170 F.Supp.2d 278, 284-5 (D.Conn. 2001)(Arterton, J) Such testimony is hearsay, irrelevant and likely to only confuse the jury. Federal Rules of Evidence 401, 402, 403, 801 and 802. **(No documents or witnesses identified)**

(D)     Plaintiff should be precluded from presenting any testimony respecting emotional distress. *See* Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001), *citing* Carey v. Piphus, 435 U.S. 247, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978); Memphis Community School District v. Stachura, 477 U.S. 299, 106 S.Ct. 2537, 91 L.Ed.2d 249 (1986); Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927 (5th Cir.1996), *cert. denied,* 519 U.S. 1091, 117 S.Ct. 767, 136 L.Ed.2d 713 (1997); Forshee v. Waterloo Industries, Inc., 178 F.3d 527, 531 (8th Cir. 1999) The FCRA Contains no presumed damages for a negligent violation[4] and no authority to award nominal damages for a negligent violation. (See also, Gunby v. Pennsylvania Electric Co., 840 F.2d 1108 (3rd Cir.1988)

The only evidence that Plaintiff was harmed will be her own self-serving, conclusory testimony that she was embarrassed or distressed, which "emotions" are not connected to a credit denial. Plaintiff denies medical treatment, there is no medical testimony, or a scintilla of evidence to corroborate her claim. Plaintiff's first attempt

---

[4]     The FCRA is one of several components of the Consumer Protection Act in Title 15. In the Fair Debt Collection Practices Act, 15 U.S.C. §1691 *et seq.*, (the "FDCPA") the Congress expressly provided for presumed damages for "failure to comply" with the FDCPA. §1691e(b). Clearly, the Congress knew how to include presumed damages in Title 15 and chose not to do so in the FCRA.

identify lay witnesses to support her emotional distress claims is the instant joint trial memorandum. Plaintiff refused to answer Trans Union's Interrogatory respecting "persons with knowledge of the allegations in the Complaint" and failed to identify any such persons in an Initial Disclosure. The new witnesses were identified over the two days the parties drafted the instant order. Trans Union is unfairly prejudiced by the late identification and attempt at trial by ambush. Plaintiff's assertions are insufficient to meet the burden of proof in this FCRA action and Plaintiff should be precluded from presenting evidence or testimony relating to her emotional distress claims. Federal Rules of Evidence 401, 402, 403, 801 and 802. **(No Exhibits; Newly (or yet to be) Identified Witnesses, including Frank Blois [Husband]; Catherine Ahern [Mother]; Katherine Ahern [Sister]; Mecca [(co-worker]; Bonito [cousin]; "To be identified" [unidentified "co-workers"]**

(E)    Plaintiff should be precluded from testifying about her communications with the Credit Bureau of Connecticut or the Connecticut State Police, all of which predate her disputes to Trans Union and are entirely irrelevant and unrelated to her claim against Trans Union and hearsay to the extent plaintiff may seek to relay what others said to her. Moreover, the jury may be unnecessarily confused by references to the Connecticut Credit Bureau, which was separate from Trans Union at the time, but later purchased by Trans Union. Plaintiff has not identified any documents which are competent to establish a legal connection between the Connecticut Credit Bureau and Trans Union. Plaintiff's first attempt to identify a witness is this Joint Trial Memorandum. Plaintiff refused to answer Trans Union's Interrogatory respecting "persons with knowledge of the allegations in the Complaint" and failed to identify any such persons in an Initial Disclosure. Trans Union will be unfairly prejudiced and potentially forced to bring in additional witnesses to explain and distinguish the entities, all in connection with irrelevant matters which pre-date Trans Union's involvement with plaintiff and her credit file. Federal Rules of Evidence 401, 402, 403, 801 and 802. **(Exhibits 1, 2, 3, 4 and 5; Witness: Richard Capobianco)**

(F)    Plaintiff should be precluded from submitting documents or testimony respecting irrelevant and outdated Consent order and irrelevant newspaper articles respecting unrelated trials in which Trans Union was a party. Federal Rules of Evidence 401, 402, 403, 801 and 802. **(Exhibits 21, 22 and 23; No Witness)**

(G)    Plaintiff should be precluded from presenting testimony (or documents) respecting her erroneous contention that Trans Union violated the FCRA by not sending her dispute letter to credit grantors

as part of the reinvestigation process, particularly where there is no evidence any alleged attachment would have impacted the reinvestigation process. Federal Rules of Evidence 401, 402, 403, 801 and 802. **(No Exhibits; No Witness)**


(H)    Plaintiff should be precluded from presenting testimony or argument respecting her erroneous and irrelevant contention that Trans Union's procedure of "cloaking" accounts somehow violates the FCRA. Federal Rules of Evidence 401, 402 403, 801 and 802. **(No Exhibits; No Witness)**

(I)    Plaintiff should be precluded from testifying, presenting documents or arguing that particular Trans Union employees are currently employed. The subject employees are located in California and their depositions were not sought by plaintiff. Trans Union has chosen not to call the employees, but instead their managers, who will also explain Trans Union's general business and procedures. It is anticipated that plaintiff will improperly seek to argue that Trans Union has "failed" to present the persons at trial. Trans Union has no duty to produce the witnesses and plaintiff is not entitled to an instruction or inference regarding the fact that the witnesses will not be called. Such testimony is irrelevant and likely to only confuse the jury. Federal Rules of Evidence 401, 402, 403. **(No documents or witnesses identified)**

(J)    Trans Union objects to plaintiff's identification of trial counsel, Bruce Luckman, as a potential witness. Luckman was not previously identified and, in any event, is not competent to testify regarding the suggested topics. Further, neither Luckman nor the unidentified Trans Union witness(es) are competent to testify respecting the information received by unidentified third parties. Plaintiff fails to identify the third parties or the dates of the alleged events. Trans Union does not keep copies of the information sent to third parties. Also, third party lenders often filter the information through internal software which transforms the Trans Union information to suit the particular needs of the lender – the reader may only view a denial or approval. What the lender (or more likely its computer lending software) actually "sees" is not know to Trans Union. Federal Rules of Evidence 401, 402, 403, 801 and 802.

_10·16·03_
DATED

BRUCE S. LUCKMAN ct 10830
SATZBERG, TRICHON,
  KOGAN & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
email: bluckman@mstkw.com

*Local Counsel:*

Ira W. Bloom, Esq. (ct 07629)
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Ave., P.O. Box 777
Westport, CT 06881-0777
(203) 227-9545; Fax: (203) 226-1641
email: ibloom@wsdb.com

*Counsel for Defendant,*
*Trans Union LLC*

by express permission
10·16·03

JOANNE S. FAULKNER ct 04137   DATED
123 Avon St.
New Haven, CT 06511-2422
(203) 772-0395
jfaulkner@snet.net

*Counsel for Plaintiff*

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARLEEN AHERN

301cv02313 (DJS)

v.

TRANS UNION LLC
ZALE CORPORATION

## CERTIFICATE OF SERVICE

Bruce S. Luckman, Esq., hereby certifies that he caused a true and correct copy of the

foregoing Second Amended Joint Trial Memorandum to be sent on this date, *via* FedEx, postage

prepaid, to the following:

> Joanne S. Faulkner, Esq.
> 123 Avon St.
> New Haven, CT 06511-2422
> (203) 772-0395
>
> *Counsel for Plaintiff*

BRUCE S. LUCKMAN

DATED:    October 16, 2003