UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARLEEN AHERN

  v.                Case No. 3:01CV 2313 (RNC)

TRANSUNION LLC

## THIRD AMENDED TRIAL MEMORANDUM

### 1.  TRIAL COUNSEL

For the plaintiff:
Ian B. Lyngklip
Lyngklip & Taub Consumer Law Group
24500 Northwestern Highway Ste 206
Southfield MI 48075
(248) 746-3790
 (248) 746-3793 (fax)
ianlaw@pop.net

Leonard A. Bennett
Leonard A. Bennett, P.C.
12515 Warwick Blvd Ste 100
Newport News VA 23606-2675
(757) 930-3660
 (757) 930-3662 (fax)
lenbennett@cox.net

For the defendant:
BRUCE S. LUCKMAN {CT.# 10830}
SATZBERG, TRICHON
 & KOGAN, P.C.
1818 Market Street, 30th floor
Philadelphia, PA  19103
(215)  575-7600/fax 215-575-7688

### 2. JURISDICTION

  This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over plaintiff's

claims under the Fair Credit Reporting Act, 15 U.S.C. § 1681p, and supplemental jurisdiction

pursuant to 28 U.S.C. § 1367 over plaintiff's pendent state claims.

3.      **JURY/NON-JURY**

This case is to be tried to a jury.

4.      **NATURE OF THE CASE**

Plaintiff seeks relief under the Fair Credit Reporting Act, the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. §42-110a *et seq.*, the Consumer Credit Reports Act ("CCRA"), Conn. Gen. Stat. §36a-695, and common law because she alleges Trans Union negligently or intentionally violated the Acts. She seeks actual damages, punitive damages, or statutory damages, together with attorney's fees and costs if she prevails.

5.      **STIPULATION OF UNCONTESTED FACTS**

1.      Plaintiff is a consumer within the meaning of the FCRA. § 1681 a(c).

2.      Trans Union is a consumer reporting agency within the meaning of the FCRA.

§ 1681 a(f).

3.      On July 19, 2000, at plaintiff's request, Trans Union furnished plaintiff a free copy of her credit file ("disclosure") because Ms. Ahern stated that person who used her info is now in jail for the second time and Ms. Ahern requested a copy of the credit report to dispute fraud accounts.

4.       The July 19, 2000, report did not contain the disputed Zale account.

5.      The July 19, 2000, report included two statements regarding credit fraud which were inserted before July 19, 2000. One of the fraud statements is dated 11/96.

6.      Trans Union received a letter from Joanne S. Faulkner, Esq., dated October 20, 2001, which was received at Trans Union's consumer relations office in Crum Lynne, PA on October 19, 2001, and mailed it to FVAD, which received it on October 24, 2001.

7.      On October 29, 2001, Nadia Reynaga, Consumer Contact Representative, operator no. C7191 pulled internal disclosures for reinvestigation.

8.      The internal copy of plaintiff's credit information included a statement: FRAUD VICTIM; DO NOT EXTEND CREDIT WITHOUT FIRST CONTACTING ME PERSONALLY AND VERIFYING ALL APPLICANT INFORMATION . . . CONSUMER DISPUTES ALL INQUIRIES; STATES THEY ARE FRAUD INQUIRIES.

9.      The internal copy of plaintiff's credit report also included a special message: CONSUMER STATEMENT ON FILE RELATES TO TRUE NAME FRAUD OR CREDIT FRAUD.

10.     On November 9, 2001, Sarah Maestrejuan, Consumer Contact Representative, operator no. C4082, reviewed the October 19, 2001 letter and the October 29, 2001 internal disclosures. Ms. Maestrejuan wrote the comments which appear on the disclosures at that time, except for the comments relating to the Zale account. The comment "PC" on the disclosure is 'per consumer'.

11.     As of October 29, 2001, the most recent information furnished by Zale OUT/HSB to Trans Union was that the Zale account had been opened in 08/1999, and had been charged off and closed in 08/2000

12.     On November 9, 2001, the letter and disclosures were given to Mark Clemente, Verifier, operator no. C4488. Mr. Clemente called Zale Outlet/Hurley State Bank (800) 767-9103 and spoke to Sheila. Mr. Clemente wrote the information shown on a telephone verification.

13.     Thereafter, on November 9, 2001, the letter, disclosures, and telephone verification were returned to Ms. Maestrejuan, who wrote the comments next to the Zale account as

shown on the internal disclosure. "VTR" means Verified To Remain; "1F" means same first name; "1L" means same last name; "5" means same Social Security Number.

14.     Thereafter, on November 9, 2001, Trans Union determined that the Zale account (tradeline)  should remain on plaintiff's credit file, and that the tradelines for Capital 1 Bank and ANBCC should be cloaked.

15.     On November 9, 2001, Trans Union determined that the FUNB Recovery tradeline should be cloaked on plaintiff's credit file.

16.     On November 9, 2001, Trans Union mailed plaintiff a copy of her report.

17.     Trans Union informed Ms. Ahern that the tradelines for ANBCC, Capital 1 Bank and FUNB were deleted and that the Zale account was not deleted.

18.     The Zale account was deleted on January 29, 2002.

19.     The Hartford address and telephone number were removed from Ms. Ahern's credit file on August 19, 2002.

20.     On November 9, 2001, Trans Union sent Ms. Ahern's a copy of her consumer disclosure showing that the Zale Account was not deleted and that the Capital 1 Bank, ANBCC and FUNB Recovery accounts were deleted.

21.     This action was filed on December 11, 2001.

**6.  Plaintiff's Contentions**:

        Trans Union violated nearly every applicable Fair Credit Reporting Act (FCRA) reinvestigation obligation established by Congress in 1996 under 15 U.S.C. §1681i(a), as well as those established under parallel state law, Conn. Gen. Stat. §36a-699b, -c, -e. Plaintiff's social security number was stolen and used by an impostor. With full knowledge of the "identity theft," TransUnion continued to combine the impostor's bad credit with plaintiff's good credit, based on the impostor's use of plaintiff's social security number. Other than the

same social security number, plaintiff (Carleen Ahern) and the impostor (Carline Coleman) had different names, different months of birth, and lived in different Connecticut towns. They had separate credit reports. Ms. Coleman had only adverse entries (referred to as tradelines[1]) on her report; the plaintiff's report was good except for the Coleman tradelines which Trans Union should not have included in plaintiff's report. TransUnion put a "fraud alert" it put on plaintiff's own file in 1996, and included the flag "True Name Fraud or Credit Fraud" in 1999. Yet Trans Union rejected plaintiff's claim that she is not Ms. Coleman and that Ms. Coleman's information should be removed from plaintiff's credit file. In particular, after verifying that a disputed Zale account belonged to Coleman, not Ahern, Trans Union's Fraud Unit retained it on plaintiff's credit file rather than transfer it to Coleman's.

Defendant violated the FCRA (1) failing "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates" in that it included several negative tradelines in plaintiff's file (incurred by an imposter) after repeated notice that an imposter was using her SSN, §1681e(b); (2) by failing to comply with its timing and procedural obligations to conduct a reasonable reinvestigation after plaintiff's dispute notice, §1681i; (3) by willfully retaining the disputed Zale account on plaintiff's credit report despite overwhelming corroboration that it was not hers; or (4) by disclosing plaintiff's credit file to persons with no permissible purpose.

Magistrate Judge Smith implicitly found that Trans Union had violated the FCRA in the respects urged by plaintiff, leaving only (1) whether Trans Union acted willfully and (2) whether Trans Union conceals from consumers that it only cloaks disputed accounts yet tells consumers that they were deleted.

---

[1] A tradeline is "Any credit account such as a bank loan, credit card, or mortgage" according to defendant's Web site, www.transuion.com.

Plaintiff seeks actual damages, statutory damages, punitive damages, costs, and attorney's fees.

**7. Defendant's Contentions:**

Trans Union is a consumer reporting agency as defined by the FCRA. Plaintiff claims that Trans Union violated the FCRA by negligently reporting (§1681e(b)) and later reinvestigating (§1681i) a fraudulent "Zale" account on her credit report. Plaintiff's instant counsel made a single dispute to Trans Union regarding the content of plaintiff's Trans Union report in or about October 2001. While there were other derogatory accounts on plaintiff's file, the complaint in the instant action concerns the Zale account only. (The other accounts were deleted by Trans Union after her single dispute. Those other creditors are defendants in the related action, Ahern v. Equifax, Capital One, Cross Country Bank, First Union Bank and Associates Bank, (No. 01-CV-2309), pending before Judge Eginton.) This is not a "mixed-file" case where information belonging to someone with a similar name appeared on plaintiff's file. Instead, the criminal used plaintiff's personal identifiers including her social security number to open credit accounts which were then reported to Trans Union as if they belonged to plaintiff.

Plaintiff also claims that Trans Union furnished information to credit grantors, including Chase Manhattan Bank, "even though none had a permissible purpose." (Complaint, para. 11) This allegation is most curious because plaintiff's sole actual damages claim is that: "Denials include 'Toys'R'Us' Visa Gold Card from **Chase** in June 2000. (See Plaintiff's Answer to Trans Union's Interrogatory, No. 11.)(For the reasons set forth below, this pre-dispute claim is legally defective as well.) Plaintiff denies medical treatment. (See Plaintiff's Answer to Interrogatory 15)

Finally, plaintiff also claims that she is entitled to punitive damages because Trans Union's "conduct was wilful." Complaint, paragraph 20. Plaintiff has not deposed a single Trans Union witness. Plaintiff has not presented any evidence of willfulness and relies almost entirely upon attorney argument and characterization of Trans Union's manuals. Plaintiff's FCRA claims fail because she cannot prove the elements of her claims.

FCRA requires consumer reporting agencies "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The FCRA, however, is not a strict liability statute. Cahlin, *supra* 936 F.2d at 1156. The reporting of inaccurate information alone does not establish a claim. The elements of a negligent §1681e(b) claim are well-established:

> (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; **(3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.** Whelan v. Trans Union Corp., 862 F. Supp. 24, 829 (E.D.NY 1994) (emphasis supplied)*See also* Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3rd Cir. 1996); Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1160-1161 (11th Cir. 1991).

Plaintiff cannot meet her burden of proof on any of these elements. Plaintiff has not identified a credit grantor witness which was furnished an allegedly inaccurate Trans Union report, or a person competent to testify that such a report was used in a credit eligibility determination. See Crabill v. Trans Union, LLC, 259 F3d. 62, 664 (7th Cir. 2001)("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of `actual damages,' which is one of the remedies under the Fair Credit Reporting Act."; Cahlin, *supra*, 936 F.2d at 1161, "plaintiff bears the burden of proving that [the defendant's] credit report was a causal factor in the denial of his residential

Case 3:01-cv-02313-RNC    Document 125    Filed 09/08/2004    Page 8 of 28

mortgage.") Thus, plaintiff cannot prove the second, third or fourth (causation) elements of an FCRA §1681e(b) claim.

Plaintiff is also unable to meet the first element because Trans Union is entitled to report information from reliable sources, at least until Trans Union had notice from Plaintiff that she disputed the accuracy of the entry. <u>Casella v. Equifax Credit Reporting Services</u>, 56 F.3d 469, 474 (2nd Cir. 1995), *cert denied* 116 S.Ct. 1452, 134 L.Ed.2d 571 (1996)(*See also*, <u>Podell v. Citicorp Diners Club</u>, 112 F.3d 98, 105 (2nd Cir. 1997) and <u>Whelan v. Trans Union Credit Reporting Agency</u>, 826 F.Supp. 824, 830 (E.D.N.Y. 1994) Because plaintiff's consumer report was not furnished to a third party after her single dispute, no FCRA §1681e(b) cause of action can be established.[2]

Plaintiff's second claim is that Trans Union failed to perform reasonable reinvestigation of her dispute of the Zale's account. Plaintiff's attorney made a single dispute to Trans Union on October 19, 2001, **fifteen months** after Trans Union sent plaintiff the July 19, 2000 copy of her report. The dispute referenced several accounts, four of which were on plaintiff's file on October 2001: ANBCC, Capital 1 Bank and FUNB Recovery and the Zale Account. (The July 19, 2000 disclosure contained the ANBCC, Capital 1 Bank and FUNB Recovery tradelines, but not the Zale Account.) It is not clear why plaintiff's attorney disputed the Zale account which was not on the file in plaintiff's possession before the dispute. It is not disputed that Trans Union responded to plaintiff's dispute by deleting three of the tradelines and verifying the fourth, the Zale Account. Trans Union thereafter sent plaintiff the November 9, 2001 disclosure which provided her the results of the

---

[2]    Plaintiff's actual damages claim is the confused assertion that she was denied a Visa Card by Chase in June 2000. This claim fails for two reasons. First, it is entirely inconsistent with the allegation of her complaint that Chase did not have a "permissible purpose" to review her consumer report. (Complaint, para. 11) As such, she cannot claim that the denial of an application which she did not make caused her harm. (After the lawsuit, and in reliance upon that allegation, Trans Union deleted the Chase inquiry from plaintiff's Trans Union file.) Second, she failed to demonstrate why the application was allegedly denied.

reinvestigation and all of her FCRA rights.  As such, Trans Union complied fully with its

FCRA §1681i obligations.  <u>Podell v. Citicorp Diner's Club, Trans Union, *et al.*</u>, 112 F.3d 98,

100 (2nd Cir. 1997)

      Plaintiff has essentially manufactured a contention that Trans Union's procedure of

"cloaking," instead of "deleting" accounts, violates FCRA §1681i.  Cloaking is Trans Union's

internal nomenclature to describe the FCRA required process by which a disputed account is

permanently removed from reporting to the consumer or any third party, but remains

suppressed in the database. To the world outside Trans Union, the disputed account is

permanently deleted.  As explained in Trans Union's manuals "Cloaking prevents items from

reappearing on the file in the event that ***subscribers*** fail to correct their automated tapes."

(Emphasis supplied.)   In 2001, when plaintiff's disputed items were "cloaked", the FCRA

contained a requirement that consumer reporting agencies maintain reasonable procedures to

prevent the reappearance of information deleted pursuant to §1681i(a)(5).  See

§1681i(a)(5)(C).  "Cloaking" is Trans Union's procedure and it was 100% effective with

respect to all accounts deleted from Plaintiff's file.  The procedure effectively prevents the

account from being re-reported because the suppression process traps subsequent reporting by

the credit grantor.  (Often a credit grantor will not remove the disputed account from its

monthly automated tapes furnished to Trans Union; the cloak suppression defeats the

subsequent tapes.  FCRA §1681i)  Significantly, the new 2004 FCRA amendments attacked

identify theft with a newly codified a requirement that all consumer reporting agencies use a

system to block the re-reporting of previously deleted accounts.  The pertinent provision is as

follows:

**§ 605B. Block of information resulting from identity theft** [15 U.S.C. §1681c-2]

      (a) ***Block***. Except as otherwise provided in this section, a consumer reporting
          agency shall block the reporting of any information in the file of a
          consumer that the consumer identifies as information that resulted from an
          alleged identity theft, not later than 4 business days after the date of receipt

by such agency of- [specified evidence]

Trans Union respectfully submits that the new express "block" requirement is, effectively, cloaking.  As such, plaintiff's irrational assertion that cloaking is a concealment which supports willfulness for punitive damages is absurd and should be disregarded.

Here, the contention related to "cloaking" makes little sense because she does not allege that any accounts were deleted and later re-appeared in her Trans Union report (and it is undisputed they **did not**).

While Plaintiff fails to connect any compensatory damages to her claims, she seeks statutory damages of $100.00 to $1,000.00 because she claims Trans Union acted willfully and deliberately to violate her rights.  Plaintiff did not retain an expert or depose a Trans Union witness to support these claims. Because Trans Union followed its procedures and deleted three of the four disputed accounts and never reported (or rereported) the Zale account after the single dispute, plaintiff cannot meet even the most generous definition of punitive damages and cannot present evidence sufficient to go to the jury on her willfulness or punitive damages claims.  See Casella, *supra* 56 F.3d at 476; Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001), *cert denied*; and Philbin v. Trans Union Corporation et al., 101 F.3d 957, 970 (3rd Cir. 1996)

On March 4, 2003, Magistrate Judge Smith denied summary judgment.

**8.     AGREED STATEMENT OF CONTESTED ISSUES OF FACT AND LAW**

Whether cloaking is deleting

Whether defendant disclosed plaintiff's credit file to those without a permissible purpose

Whether defendant acted willfully within the FCRA.

Whether plaintiff suffered any cognizable harm

Whether Trans Union complied with the FCRA

Whether Trans Union intentionally violated the FCRA

Whether Trans Union negligently violated the FCRA

Whether Plaintiff communicated a dispute to Trans Union before October 2001

## 9.    PROPOSED VOIR DIRE QUESTIONS

1. Plaintiff's Proposed Voir Dire Questions are attached

2.  Defendant's proposed Voir Dire questions are attached.

## 10.    LIST OF WITNESSES

**Plaintiff's Witnesses**

Carleen Ahern, 15 Schweky Court, Wallingford CT (one hour)

Ms. Ahern will testify to the background of the theft of her identity by one Carline Coleman of Hartford CT beginning in 1996; her repeated efforts to correct her Trans Union credit file over the years; her August 1999 complaint to the State Trooper about accounts opened by Coleman which had been verified by Trans Union as Ahern's earlier in 1999; the inclusion of fraud alerts on her credit file by Trans Union; the disclosure of her credit reports including disputed tradelines to subscribers, including subscribers who did not have any permissible purpose; her expenses, damages and emotional distress resulting from Trans Union's actions.

**TRANS UNION'S OBJECTIONS, more fully set forth at Para. 14 below are as follows:**
1) Trans Union anticipates that plaintiff will attempt to testify that she was denied credit and why such credit was denied.  Such testimony is inadmissible hearsay, particularly where no evidence has been produced to support a claim that a credit determination was made at any time relevant. 2) Plaintiff should be precluded from presenting documents, testimony, or witnesses relating to damages which occurred before the date plaintiff disputed the Zale account to Trans Union as irrelevant. 3) Plaintiff should be precluded from testifying that she was upset by her review of a disclosure report which Trans Union was required to furnish to her; that she was denied credit opportunities; or that she was afraid to apply for credit.  Such testimony is hearsay, irrelevant and likely to only confuse the jury, particularly here, where her report was not furnished in connection with an eligibility determination; 4) Plaintiff should be precluded from presenting her self-serving and uncorroborated testimony that she suffered emotional

distress, particularly in the absence of reporting or a credit eligibility determination. 5) Plaintiff should be precluded from testifying about her communications with the Credit Bureau of Connecticut or the Connecticut State Police, all of which predate her disputes to Trans Union and are entirely irrelevant and unrelated to the Zale account or her claim against Trans Union and hearsay to the extent plaintiff may seek to relay what others said to her. Moreover, the jury may be unnecessarily confused by references to the Connecticut Credit Bureau, which was separate from Trans Union at the time, but later purchased by Trans Union.

6) Because plaintiff has failed to identify any documents or witnesses by which she can present her contentions to the jury, Trans Union requests that plaintiff be precluded from testifying (and her attorney from arguing) that Trans Union failed to maintain reasonable procedures, failed to conduct a reasonable reinvestigation, or that cloaking violates the FCRA  Plaintiff should also be precluded from submitting documents or testimony respecting irrelevant and outdated Consent Order and irrelevant newspaper article respecting an unrelated trial in which Trans Union was a party. (Exhibits 21, 22 and 23, previously stricken by Judge Squatrito). Plaintiff should be precluded from presenting testimony (or documents) respecting her erroneous contention that Trans Union violated the FCRA by not sending her dispute letter to credit grantors as part of the reinvestigation process, particularly where there is no evidence any alleged attachment would have impacted the reinvestigation process. Plaintiff should be precluded from testifying, presenting documents or arguing that particular Trans Union employees are currently employed and should have been called by Trans Union to testify.

<u>Richard Capobianco</u> or other representative of The Credit Bureau of Connecticut CBCT),

600 Saw Mill Rd West Haven CT 06516 (3/4 hour)

The CBCT witness will testify to the relationship of CBCT with Trans Union and CBCT's assigned responsibility to process consumer disputes for residents of Connecticut in and before 1999, as well as any activity with regard to plaintiff's credit file.

**TRANS UNION'S OBJECTIONS, more fully set forth at Para. 14 below are as follows:** the jury may be unnecessarily confused by references to the Connecticut Credit Bureau ("CBCT"), which was separate from Trans Union at all times material, but later purchased by

Trans Union. Plaintiff has not identified any documents which are competent to establish a legal connection between the CBCT and Trans Union. Plaintiff's first identification of this witness was in the original Joint Trial Memorandum. Plaintiff refused to answer Trans Union's Interrogatory respecting "persons with knowledge of the allegations in the Complaint" and failed to identify any such persons in an Initial Disclosure. Trans Union will be unfairly prejudiced if this issue is raised for the first time at trial.

<u>Frank Blois</u>, 15 Schweky Court, Wallingford CT (.3 hour)

Plaintiff's husband will testify to the plaintiff's emotional distress resulting from Trans Union's actions.

**TRANS UNION'S OBJECTIONS, more fully set forth at Para. 14 below are as follows:**

Plaintiff's first attempt to identify lay witnesses to support her emotional distress claims was during the drafting of the original joint trial memorandum. Plaintiff refused to answer Trans Union's Interrogatory respecting "persons with knowledge of the allegations in the Complaint" and failed to identify any such persons in an Initial Disclosure. Trans Union is unfairly prejudiced by the late identification and attempt at trial by ambush.

Catherine Ahern (address) (.3 hour)

Plaintiff's mother will testify to her emotional distress resulting from Trans Union's actions.

**TRANS UNION'S OBJECTION, see Objection to Blois above.**

Katherine Ahern (address) (.3 hour)

Plaintiff's sister will testify to her emotional distress resulting from Trans Union's actions.

**TRANS UNION'S OBJECTION, see Objection to Blois above.**

Maryann Mecca - 150 Tunxis Village, Farmington, CT 06032 (.3 hour)

Ms. Mecca, a co-worker, will testify to her emotional distress resulting from Trans Union's actions;

**TRANS UNION'S OBJECTION, see Objection to Blois above.**

Kelly Bonito - 351 Woodhouse Ave, Wallingford, CT 06492 (.3 hour)

Ms. Bonita, a cousin, will testify to her emotional distress resulting from Trans Union's actions.

**TRANS UNION'S OBJECTION, see Objection to Blois above.**

(To be identified) One or more co-workers (depending on availability) will testify to plaintiff's emotional distress resulting from Trans Union's actions. (.3 hour each)

**TRANS UNION'S OBJECTION, see Objection to Blois above.** By way of further response, these witnesses are not even identified, let alone never having been identified during discovery or the drafting of the prior Pretrial Memoranda.

Luckman or witnesses identified by Trans Union

(To authenticate documents in the event defendant does not stipulate to the content of Trans Union's consumer files disclosed to plaintiff and others, and communications between plaintiff and Trans Union; to testify to facts of the investigation in the event defendant does not stipulate thereto)

**TRANS UNION'S OBJECTIONS, more fully set forth at Para. 14 below are as follows:** Trans Union objects to plaintiff's identification of trial counsel, Bruce Luckman, and unidentified persons as potential witness. Luckman was never identified and for good reason. He is not competent to testify regarding the suggested topics. Luckman has no knowledge of the facts or events except that learned through his post-litigation client communications and litigation preparation. Trans Union is unable to more directly object to the "witnesses identified by Trans Union" because plaintiff has utterly failed to *identify* such persons.

**Defendant's Witnesses**

    1.      Diane Terry, Director
            Western Region, Consumer Relations
              and Fraud Victim Assistant Departments

Trans Union, Fullerton, California

Ms. Terry is expected to testify with respect to the history and operations of Trans Union's consumer relations system and database and the receipt and processing of information from customers, the Fraud Victims Assistance Department ("FVAD"), the content of Trans Union's consumer file regarding plaintiff; communications between plaintiff and Trans Union; and Trans Union and credit grantors concerning plaintiff. She is also expected to testify with respect to Trans Union's dispute, reinvestigation and information maintenance procedures and to generally describe Trans Union's database. Her direct examination will be approximately 2.50 hours.

1. **Plaintiff's objection:** Diane Terry was not personally involved in the investigation and has no personal knowledge. Fed. E. Evid. 104(a), 602. Others, still employed by Trans Union, conducted the investigation -- Nadia Reynaga, Sarah Maestrejuan, Mark Clemente.

Ms. Terry is distant from the events. She supervises the Fullerton office of Trans Union, and supervises proposed witness Reger, who in turn supervises the persons who conducted the investigation. Ms. Terry is Trans Union's "professional witness" who has testified in many depositions and trials.[3] She plans to spend 2 ½ hours talking about the history of TU's consumer relations system and database and general operation and procedures of the Fraud Victim Assistance Unit. The background information is not relevant to the facts of this case: whether in this case TU conducted a reasonable investigation in compliance with FCRA requirements. Fed. R. Evid. 401. Her testimony should be excluded pursuant to Rule 403 or 702.

Ms. Terry also proposes to testify about the "contents of plaintiff's consumer file regarding plaintiff." The consumer file presumably includes TU exhibits 1-4, 7-13, all of which are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the

---

[3] Diane Terry, TU, e.g. Mendoza v. Experian, et al.; Genera v. Trans Union; Cousin v. Trans Union; Wenger v. Trans Union; Soghomonian v. USA, et al.; Coleman v. Trans Union; Mendoza v. Experian et al.

translations in light of their proposed introduction as exhibits.

In addition, Ms. Terry should be excluded as a witness because TU has not responded to an August 2002 request to produce any proposed witness's prior statements in discovery, so that plaintiff can inquire about them. Fed. R. Evid. 613.  See Doc. No. 78, plaintiff's motion to compel a response to that unobjected-to request.

> 2.    Steven Reger, Group Manager
>       Western Region, Consumer Relations
>         and Fraud Victim Assistant Departments
>       Trans Union, Fullerton, California
>
>       Mr. Reger may be called to testify with respect to some or all of the
> issues described in 1 above. His direct examination will be one hour.

**2. Plaintiff's objection:** Steven Reger was not identified during discovery as anyone who had personal knowledge of the facts of this case. He is also TU's "professional witness."[4] His testimony should be excluded for the same reason as Ms. Terry's, and additionally because, as described by TU, his testimony will be duplicative and cumulative. Rule 403.

> 3.    Lynn Romanowski, Senior Analyst
>       Trans Union, Chicago, Illinois
>
>       Ms. Romanowski is expected to testify with respect to Trans Union's
> database and the means by which information is received and processed.  Her
> direct examination is expected to be 1.5 hours.

**3. Plaintiff's objection:** Lynn Romanowski was not identified during discovery as anyone who had personal knowledge of the facts of this case. She does not work in the Fullerton CA fraud office, but works in TU's Chicago headquarters. She is also TU's "professional

---

[4] Reger, TU, e.g. Genera v. Trans Union; Dwyer v Trans Union; Soghomonian v. USA, et al.; Donnay v. TU; French v. TU

witness.[5] She has no known knowledge of how information is received and processed. She

has no known knowledge of the facts of this case.

Romanowski is expected to testify to the matching system (Online Combine and Unify

rules), but defendant objected to Interrogatory 18, asking those very questions, as "wholly

irrelevant." See response to Interrogatory 21.

Her testimony should be excluded for the same reasons as Ms. Terry's as well as due

to TU's objection to the matching rules as "wholly irrelevant."

      4.     Keith McCawley, Trans Union, Marketing Services, Chicago, IL.

      Mr. McCawley is expected to testify with respect to the information
furnished by Trans Union to plaintiff's existing credit grantors and Trilegiant
in connection with account reviews and other inquiries; the form and manner
in which Trans Union subscribers request and are furnished information.  His
direct examination is expected to be one hour.

      5.     Wesley Kemmerlin, VP: Credit Risk Officer, Bank of America, NC1-
022-03-02, IJL Building, 201 N. Tryon Street, Charlotte, NC 28255.

**Plaintiff's objection: See ¶ 12 below on deposition testimony.**

      6.     Elizabeth Sheehan, or other cognizant and available witness,
TRILEGIANT CORP.,  100 Connecticut Ave., Norwalk, CT 06850

      Ms. Sheehan, or other appropriate witness is expected to testify with
respect to the information furnished by Trans Union to Trilegiant/Cendant
("Privacy Guard") in connection with reviews conducted; the form and manner
in which Trilegiant requested and was furnished information; and the manner
in  which the information was used.  Her/his direct examination is expected to
be one-half hour.

      7.     Joanne Faulkner, Esquire

Ms. Faulkner is expected to be called as of cross-examination to testify regarding the
circumstances the preparation of her dispute letter to Trans Union which contained a dispute

---

[5] Romanowski, TU, e.g., Lazar v Trans Union; Fleischer v. Trans Union; Thomas v. Trans Union; Coleman v.
Trans Union; McKeown v. Sears et al;  Schmitt v. TU; Porter v. TU.

of information which was not contained in the file furnished to plaintiff.  Her cross-examination is expected to be less than one hour.

**Plaintiff's objection.** Defendant's proposal to call plaintiff's counsel may be an effort to disqualify counsel. Counsel has no greater or other knowledge than plaintiff herself as to "the circumstances of the preparation of her dispute letter to Trans Union which contained a dispute of information which was not contained in the file furnished to plaintiff over a year earlier." Those circumstances would not lead to admissible evidence as to Trans Union's investigation in any event.

Like a deposition of a party's attorney, calling an attorney as a witness when the client is available "not only disrupts the adversarial system and lowers the standards of the profession, but it also adds to the already burdensome time and cost of litigation." Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). [D]epositions of opposing counsel are disfavored (citing Shelton), and would serve no useful purpose here in light of the information already supplied. . . ." United States v. Yonkers Bd. of Educ., 946 F.2d 180, 185 (2d Cir. 1991).

**11.    Exhibits**

**PLAINTIFF'S EXHIBITS**

1.  Certified copy of Ahern complaint to State Trooper and his investigation re Coleman based on negative accounts showing on June 4, 1999 TU consumer disclosure.

**Trans Union's Objection:**  There was no June 4, 1999 disclosure from Trans Union; the disclosure was furnished by the Credit Bureau of Connecticut ("CBCT") a non-party. Further, the police complaint was never sent to Trans Union.  Accordingly, the document is irrelevant hearsay and will only serve to confuse the jury and unduly prejudice Trans Union.

2.  Credit Bureau of Connecticut (CBCT) letter of Nov. 1996 acknowledging request for

reinvestigation

**Trans Union's objection:**  The letter (like the underlying but apparently missing dispute communication) was sent CBCT, not to or by Trans Union.   Accordingly, the document is irrelevant hearsay, reflects only part of an irrelevant story and will only serve to confuse the jury and unduly prejudice Trans Union.

    3.  June 4, 1999, consumer disclosure at beginning of dispute process.

**Trans Union's objection:**  The disclosure was generated by CBCT, not Trans Union and never sent to Trans Union. Trans Union did not know of its existence or content.  Any claims arising out of the disclosure are against CBCT, not Trans Union and are barred by the statute of limitations in any event.  Accordingly, the document is irrelevant hearsay, reflects only part of an irrelevant story and will only serve to confuse the jury and unduly prejudice Trans Union.

    4.  CBCT letters of 1999: Limited Express, verified; First Union, verified; cover letter of July 6 for July 6 TU report with notice about two other databases, Equifax and Experian

**Trans Union's Objection:**  There was no July 6, 1999 disclosure from Trans Union; the disclosure was furnished by CBCT and never sent to Trans Union.  Trans Union never knew of its existence. Further, the dispute letters (and the underlying but apparently missing dispute communication) were sent by CBCT, not to or by Trans Union.  The accounts were not deleted and re-reported and are not even the subject of this lawsuit.  Any claims arising out of the disclosure or 1999 reinvestigation are against CBCT, not Trans Union and are barred by the statute of limitations in any event.  Accordingly, the documents are irrelevant hearsay, reflect only part of an irrelevant story and will only serve to confuse the jury and unduly prejudice Trans Union.

    5.  July 6, 1999 TU consumer disclosure after reinvestigation still showing disputed

accounts.

**Trans Union's Objection:  See 4 above.**

6.  Transcript of CBCT testimony July 17 2000, showing CBCT's responsibility for processing consumer disputes for TU  in and before 1999 (to be introduced only if unable to procure live witness or as cross examination)

**Trans Union's Objection:**  See objection to CBCT witness Richard Capobianco, above.  By way of further objection, plaintiff has failed to designate relevant deposition pages.  Further, Trans Union was not a party to the action in which the deposition was taken and did not have an opportunity to cross-examine the witness.  The witness is not a Trans Union employee or officer.  Accordingly, the deposition is irrelevant and inadmissible hearsay and the presentation of unknown portions of the transcript are likely to confuse the jury and unduly prejudice Trans Union.

7.  Chase decline letter June 2000 based on delinquent accounts on TU credit report.

**Trans Union's Objection:**  Plaintiff withdrew any claim related to this event in writing during the drafting of the original pretrial memoranda (April 29, 2003 and confirmed again on October 16, 2003).  This is so because she first alleged in her Complaint that the Chase inquiry was the result of fraud, then in answers to interrogatories claimed the denial was her sole event of harm.  Further, she has failed to identify any witness to authenticate or explain the letter or the transaction. Finally, the event occurred **prior** to her dispute (or any other communication) to Trans Union. Accordingly, the document is inadmissible hearsay, irrelevant and unduly prejudicial. (See discussion of <u>Casella</u> and <u>Podell</u>, *supra*.)

8.  TU Consumer relations request display screen 7/19/2000 (same as TU-2) "consumer called stating that person who used her information is now in jail for the second time and is requesting a copy of credit report to dispute fraud accounts"

9.  July 19, 2000 TU consumer disclosure to plaintiff  (same as TU-5)

10. October 20, 2001 dispute letter (same as TU-6)

11. TU Supp. response to Int. 5

**Trans Union's Objection:**  The response to this interrogatory simply identifies the Trans Union employees who processed plaintiff's dispute and their dates of employment. Plaintiff wrongly contends that she is entitled to an "adverse inference" because Trans Union is not producing the employees, all of whom reside in California.  However, Plaintiff did not seek to depose the employees or obtain depositions by written questions or via telephone.  She is not entitled to an adverse inference instruction or to present argument to the jury that Trans Union "should have" produced the employees at trial.  The remaining information in Supp. Response 5 has been memorialized in the parties Stipulations, above, paras: 6 through 17.  By way of further response, see Objections set forth at 14(I) below.

12. TU response to Int. 19

**Trans Union's Objection:**  The information contained in the response concerns either a fraud alert statement placed in plaintiff's file by **CBCT** (not Trans Union) in 19**96** or a "do not confuse" notation Trans Union placed in plaintiff's file as a **post**-litigation remedial measure. In each event, the information is irrelevant to plaintiff's claims against Trans Union and will only confuse and/or unduly prejudice the jury.

13. TU response to Adm. 20

14. Oct. 19 TU File Correction Work Order showing receipt of dispute letter.

15. Oct. 29, 2001 TU internal disclosures for investigations for Ahern & Coleman with handwriting

16. Nov. 8 Telephone Verification form

17. Nov. 9 2001 TU consumer disclosure of plaintiff (same as TU-14)

18. Nov. 9 2001 TU consumer disclosure of Coleman (same as TU-15)

19. TU Policy Manual, page entitled Cloaking

20. TU ACDV to FUNB

21. Plaintiff's TU credit disclosure August 5, 2002

22. Plaintiff's TU credit disclosure August 19, 2002

23. AP article Thomas v. Trans Union July 30, 2002

**Trans Union's Objection:** This matter was previously decided by Judge Squatrito at the first final pretrial on December 22, 2003. The exhibit was stricken because the newspaper article about another case is inadmissible hearsay, entirely irrelevant and will serve solely to inflame and unduly prejudice the jury.

24. TU consent order with FTC (1992)

**Trans Union's Objection:   See 23 above.** The exhibit was stricken. By way of further objection, Plaintiff should be precluded from submitting documents or testimony respecting an irrelevant and  outdated Consent Order, particularly where there is no witness  or claim connected to the irrelevant document.

1.  TU consent order with CT AG (1992)

**Trans Union's Objection:  See 23 and 24 above. The exhibit was stricken.**

2.   TU's Response to Interrogatory No. 21.

**Trans Union's Objection:  See Objection to 11 above.**


**Plaintiff requests the Court to take judicial notice of Trans Union's pattern and practice of violating the FCRA's investigation requirements (Pl. Proposed Jury Instr. No.  21)**


**Trans Union's Objection:**  There is no legal or factual basis for plaintiff's request.  On the contrary, the reasonableness of reinvestigations is often a question for the jury, rather than for summary judgment, but never a subject for "judicial notice;" negligence or statutory violations never are.  Further, to the extent plaintiff intends the "judicial notice" to replace her burden of presenting evidence of Trans Union's conscious disregard for her FCRA rights in order to demonstrate wilfulness, (See <u>Casella</u>, *supra*) plaintiff's request is without merit and

ludicrous.

25. Declaration of Trans Union Witness Steven Reger dated 9-13-02, Ex A to Doc. No. 49, regarding defendant's fraud investigation procedures as an admission against interest in the event defendant does not present him as a witness as represented.

Trans Union's Objection:  The summary judgment declaration is, for purposes of trial, inadmissible hearsay and unreasonably cumulative and redundant as it simply duplicates the facts regarding the reinvestigation of plaintiff's single dispute which are already stipulated to by the parties (See Stipulations 6 through 17).  The use of the document at trial subverts the purpose of the Stipulations and will create potential for jury confusion unless Trans Union then calls Mr. Reger into Court (from California) to testify live.  Further, plaintiff wrongly contends that she is entitled to an "adverse inference" because Trans Union is not producing certain employees, all of whom reside in California.  However, Plaintiff did not seek to depose Reger or other employees or obtain depositions by written questions or via telephone. Thus, she is not entitled to an adverse inference instruction or to present argument to the jury that Trans Union "should have" produced the employees at trial.  If the declaration is introduced, it is likely the jury will be confused and Trans Union will be unfairly prejudiced if Reger is not then called to testify live.  The probative value of the declaration is minimal or non-existent in light of the Stipulations; the likelihood of jury confusion and prejudice to Trans Union severe.


## DEFENDANT'S EXHIBITS

Trans Union -1         Consumer relations system history search summary;
**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union -2          consumer relations system consumer request display computer
                        screen  print dated July 19, 2000;

**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union -3          consumer relations system comment display and entry computer
                        screen print dated July 19, 2000;

**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union-4           consumer relations system consumer personal information
                        computer screen print [July 19, 2000];

**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union-5           July 19, 2000 Trans Union consumer file disclosure of Carleen
                        Mary   Ahern;

Trans Union-6           Ms. Faulkner's October 21, 2001 letter to Trans
                        Union

Trans Union-7           File correction work order and October 29, 2001 internal
disclosure for Carleen Ahern, with notes;

**Plaintiff's objection** to the extent TU proposes to introduce only the Ahern file and not the Coleman file which the investigator pulled up and used at the same time for the purpose of investigation. The Ahern document alone is incomplete and misleading as to the course of the investigation.

Trans Union-8           consumer relations system consumer request display computer
screen  print dated October 29, 2001;

**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union-9        consumer relations system personal information and employment information computer screen prints [November 9, 2001];
**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union-10        consumer relations system trade set detail and expanded trade set detail screen prints re: FUNB Recovery - November 9, 2001;
**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union-11        consumer relations system trade set detail and expanded trade set detail screen prints re: Zale Out/HSB dated November 9, 2001;
**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union-12        consumer relation system trade set detail and expanded trade set detail screen prints re: ANBCC dated November 9, 2001;
**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union-13        consumer relation system trade set detail and expanded trade set detail screen prints re: Capital 1 Bk dated November 9, 2001;
**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

Trans Union-14        consumer relation system trade set detail and expanded trade set detail screen prints re: FUNB Recovery dated November 9, 2001;
**Plaintiff's objection:** documents are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as

exhibits.

> Trans Union-15        November 9, 2001 Trans Union consumer file disclosure of
> Carleen Mary Ahern;
>
> Trans Union-16        November 9, 2001 Trans Union consumer file disclosure of
> Carline Coleman.
>
> Trans Union-17        Trans Union produced its Fraud Victims Assistance Department
> ("FVAD") Standard Operating Procedures
>
> Trans Union-18        Trans Union Training and Reference Manual
>
> Trans Union - 19      Understanding CRONUS presentation
>
> Trans Union – 20      Trans Union job folder documents  containing data layout and
>                       respecting Bank of America

**Plaintiff's objection:** unknown, never produced in discovery, self-selected, did not does not
represent all entities that got report, e.g., Chase, Lord & Taylor, Merchant's Assoc, MBNA,
Wolpoff & Abramson, Capital One, Allstate, NCO Group. Wells Fargo

> Trans Union – 21      Trans Union job folder documents containing data layout and
>                       respecting Trilegiant/Cendant's review of plaintiff's file

**Plaintiff's objection:** unknown, never produced in discovery, self-selected, did not does not
represent all entities that got report, e.g., Chase, Lord & Taylor, Merchant's Assoc, MBNA,
Wolpoff & Abramson, Capital One, Allstate, NCO Group. Wells Fargo

> Trans Union – 22      Designated Portions of Deposition of Bank of America/Wesley
>                       Kemmerlin   See plaintiff's **objection** below, under ¶ 12.
>
> Trans Union – 23      Current Disclosure for Plaintiff

**Plaintiff's objection:** The FCRA prohibits TU from disclosing plaintiff's confidential and
private credit report without her permission, which it does not have. Plaintiff does not
perceive any possible admissibility of her "current" disclosure, since this case involves TU's
prelitigation investigations. TU may not disclose a report for the purpose of litigation, since
that is not one of the permissible purposes under the FCRA**.**

## 12. DEPOSITION TESTIMONY

> <u>Trans Union</u>:.  Wesley Kemmerlin, VP: Credit Risk Officer, Bank of America,

NC1-022-03-02, IJL Building, 201 N. Tryon Street, Charlotte, NC 28255

Mr. Kemmerlin is expected to testify via deposition transcript  with respect to the information furnished by Trans Union to Bank of America in connection with account reviews conducted; the form and manner in which Bank of America requested and was furnished information; and the manner in which the information was used.  His direct examination via transcript is expected to be one-half hour.  The designation was duly filed and served. (Docket 101)

**Plaintiff's objection:** Defendant's deposition of Mr. Kammerlin excused the Witness, on the record, from producing the credit information defendant had subpoenaed, intentionally depriving plaintiff of the chance to examine the documents and witness. See excerpts, attached to Doc. No. 102.

13.    **PROPOSED JURY INSTRUCTIONS**

1. PLAINTIFF'S requests for Jury Instructions are attached.

2. DEFENDANT'S proposed Jury Instructions are attached.

**14. Anticipated Evidentiary problems:** The parties attach their Motions in Limine

15. Proposed findings and conclusions for nonjury case: Not applicable.

16.    **LENGTH OF TRIAL**

Counsel for the parties estimate 1-2 trial days.

17.     **FURTHER PROCEEDINGS**

Determination of objection to witnesses and objections to evidence as per Motions in Limine

18.     **TRIAL BY MAGISTRATE JUDGE**

The parties have not agreed to a trial by a Magistrate Judge.


\_\_/s/_____     _____
BRUCE S. LUCKMAN ct 10830     DATED
SATZBERG, TRICHON,
  KOGAN & WERTHEIMER, P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-7688
email: bluckman@mstkw.com
*Local Counsel:*
Ira W. Bloom, Esq. (ct 07629)
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Ave., P.O. Box 777
Westport, CT 06881-0777
(203) 227-9545; Fax: (203) 226-1641
email: ibloom@wsdb.com

*Counsel for Defendant,*
*Trans Union LLC*


\_\_/s/_____     _____
JOANNE S. FAULKNER ct 04137   DATED
123 Avon St.
New Haven, CT 06511-2422
(203) 772-0395
jfaulkner@snet.net

*Counsel for Plaintiff*