UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARLEEN AHERN

v.                                    Case No. 3:01CV 2313 (RNC)

TRANSUNION LLC

### PLAINTIFF'S MEMORANDUM RE
### ANTICIPATED EVIDENTIARY PROBLEMS

Pursuant to paragraph d. of the Trial Memorandum Order, plaintiff submits this
memorandum regarding anticipated evidentiary problems.

Plaintiff respectfully refers the Court to opinions dealing with Trans Union's
efforts in limine to block a plaintiff from proving his or her case. Soghomonian v. United
States &Trans Union, 278 F Supp. 2d 1151 (E.D. Cal. 2003); Crane v. Trans Union,
LLC, 282 F. Supp. 2d 311 (E.D. Pa. 2003); Lawrence v. Trans Union LLC, 2003 WL
22992081 (E.D. Pa. Dec. 11, 2003); Evantash v. G.E. Capital Mortgage Services &Trans
Union, 2003 WL 22844198 (E. D. Pa. Nov. 25, 2003)

CREDIT BUREAU OF CONNECTICUT

Trans Union was ORDERED to produce its agreement with Credit Bureau of
Connecticut (CBCT). It refused to do so. Pursuant to that Agreement, Plaintiff's first two
disputes, 1996 and 1999, were recorded and maintained in Trans Union's data base,
putting this defendant on notice of the identity theft and mandating it to use reasonable
procedures thereafter to assure maximum possible accuracy when it prepared a report.
Trans Union objects to plaintiff's presenting testimony about her communications with
CBCT  partly on its assertion that "[CBCT was separate from Trans Union at the time,
but later purchased by Trans Union.  Plaintiff has not identified any documents which are

competent to establish a legal connection between the Connecticut Credit Bureau and Trans Union." However, another affiliate relationship is described in <u>Trans Union Credit Info. v. Assoc. Credit Services</u>, 805 F.2d 188, 190 (6th Cir. 1986) as a contractual sale and purchase of credit reporting services with unrestricted access to each other's system. The affiliate relationship is also disclosed in <u>Trans Union LLC v. Credit Research, Inc.</u>, 2001 U.S. Dist. LEXIS 7559 (N.D. Ill. June 4, 2001) and <u>Individual Reference Services Group v. FTC</u>, 145 F. Supp. 2d 6, *aff'd,* 245 F.3d 809 (D. C. Cir. 2001), *cert. denied,* 122 S.Ct. 2386 (June 2002).

Since defendant has refused to produce the pertinent document as to its relationship with CBCT, it should not be permitted to take the position that plaintiff's dealings with CBCT are inadmissible. Fed. R.Civ. P. 37(c).

## WITNESSES

1.  Trans Union Witness Diane Terry: She was the only witness identified by TU during the course of discovery as having personal knowledge of the events of Trans Union's investigation of plaintiff's October 2001 dispute about an impostor's credit items on plaintiff's credit report. Diane Terry was not personally involved in the investigation and has no personal knowledge. Fed. E. Evid. 104(a), 602. Others, still employed by Trans Union, conducted the investigation -- Nadia Reynaga, Sarah Maestrejuan, Mark Clemente. See attached response to interrogatory 21.

Ms. Terry is distant from the events. She supervises the Fullerton office of Trans Union, and supervises proposed witness Reger, who in turn supervises the persons who conducted the investigation. Ms. Terry is Trans Union's "professional witness" who has

testified in many depositions and trials.[1] She plans to spend 2 ½ hours talking about the history of TU's consumer relations system and database and general operation and procedures of the Fraud Victim Assistance Unit. The background information is not relevant to the facts of this case: whether in this case TU conducted a reasonable investigation in compliance with FCRA requirements.  Fed. R. Evid. 401. Her testimony should be excluded pursuant to Rule 403 or 702.

Ms. Terry also proposes to testify about the "contents of plaintiff's consumer file regarding plaintiff."  The consumer file presumably includes TU exhibits 1-4, 7-13, all of which are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

In addition, Ms. Terry should be excluded as a witness because TU has not responded to an August 2002 request to produce any proposed witness's prior statements in discovery, so that plaintiff can inquire about them. Fed. R. Evid. 613.  See Doc. No. 78, plaintiff's motion to compel a response to that unobjected-to request.

2. Steven Reger was not identified during discovery as anyone who had personal knowledge of the facts of this case. He is also TU's "professional witness."[2] His testimony should be excluded for the same reason as Ms. Terry's, and additionally because, as described by TU, his testimony will be duplicative and cumulative. Rule 403.

3. Lynn Romanowski was not identified during discovery as anyone who had personal knowledge of the facts of this case. She does not work in the Fullerton CA fraud

---

[1] Diane Terry, TU, e.g. Mendoza v. Experian, et al.; Genera v. Trans Union; Cousin v. Trans Union; Wenger v. Trans Union; Soghomonian v. USA, et al.; Coleman v. Trans Union; Mendoza v. Experian et al.
[2] Reger, TU, e.g. Genera v. Trans Union; Dwyer v Trans Union; Soghomonian v. USA, et al.

office, but works in TU's Chicago headquarters. She is also TU's "professional witness.[3]
She has no known knowledge of how information is received and processed. She has no
known knowledge of the facts of this case.

Romanowski is expected to testify to the matching system (Online Combine and
Unify rules), but defendant objected to Interrogatory 18, asking those very questions, as
"wholly irrelevant." See attached response to Interrogatory 21.

Her testimony should be excluded for the same reasons as Ms. Terry's as well as
due to TU's objection to the matching rules as "wholly irrelevant."

4. Joanne S. Faulkner. Defendant's proposal to call plaintiff's counsel may be an
effort to disqualify counsel. Counsel has no greater or other knowledge than plaintiff
herself as to "the circumstances of the preparation of her dispute letter to Trans Union
which contained a dispute of information which was not contained in the file furnished to
plaintiff over a year earlier." Those circumstances would not lead to admissible evidence
as to Trans Union's investigation in any event.

Like a deposition of a party's attorney, calling an attorney as a witness when the
client is available "not only disrupts the adversarial system and lowers the standards of
the profession, but it also adds to the already burdensome time and cost of litigation."
Shelton v. American Motors Corp., 805 F.2d 1323, 1327 (8th Cir. 1986). [D]epositions
of opposing counsel are disfavored (citing Shelton), and would serve no useful
purpose here in light of the information already supplied. . . ." United States v.
Yonkers Bd. of Educ., 946 F.2d 180, 185 (2d Cir. 1991).

---

[3] Romanowski, TU, e.g., Lazar v Trans Union; Fleischer v. Trans Union; Thomas v. Trans Union; Coleman
v. Trans Union.

DOCUMENTS

1. TU exhibits 1-4, 8-14, all of which are obscurely coded. TU refused to translate them under oath for plaintiff; it should not be allowed to translate them for the jury. See Doc. No. 74, pursuing Interrogatory 20 for the translations in light of their proposed introduction as exhibits.

2. TU Exhibit 7 which proposes to introduce only the Ahern file and not the Coleman file which the investigator pulled up and used at the same time for the purpose of investigation. The Ahern document alone is incomplete and misleading as to the course of the investigation.

2. TU exhibit 20, current disclosure for plaintiff. The FCRA prohibits TU from disclosing plaintiff's confidential and private credit report without her permission, which it does not have. Plaintiff does not perceive any possible admissibility of her "current" disclosure, since this case involves TU's 2001 investigation. TU may not disclose a report for the purpose of litigation, since that is not one of the permissible purposes under the FCRA.

15 U.S.C. §1681b(f).(The following cases all pre-date the 1996 amendments, which confirm their holdings): Rice v. Montgomery Ward & Co., Inc., 450 F. Supp. 668, 670-72 (M.D. N.C. 1978) (improper to obtain credit report after suit filed for use in litigation); Klapper v. Shapiro, 586 N.Y. S.2d 846 (1992) (no privilege for attorney who uses credit report on opposing attorney during litigation); Bils v. Nixon, Hargrave, Devans & Doyle, 880 P.2d 743 (Ariz. App. 1994) (improper to get report to discover information which might be used in litigation); Duncan v. Handmaker, 149 F.3d 424, 426-28 (6th Cir. 1998) (no legitimate business need to obtain report to prepare for litigation); Bakker v. McKinnon, 152 F.3d 1007, 1011-12 (8th Cir. 1998) (same); Comeaux v. Brown & Williamson Tobacco Co., 915 F.2d 1264, 1267, 1273-74 (9th Cir. 1990) (at least negligence, as a matter of law, to obtain consumer report for use in litigation); Auriemma v. Montgomery, 860 F.2d 273, 279, 280-81 (7th Cir. 1988) (extra-judicial investigation by attorneys improper; no privilege); Russell v. Shelter Financial Services, 604 F. Supp. 201, 203 (W.D. Mo. 1984) (defendant's burden to prove request for consumer's information proper); Mone v. Dranow, 945 F.2d 306, 308 (9th Cir. 1991) (obtaining credit report to investigate for purposes of litigation improper; Yohay v. City of Alexandria Employees Credit Union, Inc., 827 F.2d 967, 971 (4th Cir. 1987) (improper for attorney to get spouse's report to use in litigation); Boothe v. TRW Credit Data, 557 F. Supp. 66, 70-71 (S.D.N.Y. 1982); Rylewicz v. Beaton Services, Ltd., 698 F. Supp. 1391, 1400 n.10 (N.D. Ill. 1988), aff'd 888 F.2d 1175, 1181 (7th Cir. 1989); Houghton v. N.J. Manufacturer's Ins. Co., 795 F.2d 1144, 1149 (3d Cir. 1986) (obtaining report after litigation for use in litigation improper).

THE PLAINTIFF


BY_____/s/ Joanne S. Faulkner____
JOANNE S. FAULKNER ct04137
123 Avon Street
New Haven, CT 06511-2422
(203) 772-0395
j.faulkner@snet.net