IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF CONNECTICUT

| | |
|---|---|
| CARLEEN AHERN ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | C.A. No: 3:01cv02313 (RNC) |
| ) | |
| TRANS UNION LLC ) | Dated: February 28, 2005 |
| ) | |
| Defendant. ) | |

**TRANS UNION LLC'S TRIAL BRIEF**

Trans Union LLC ("Trans Union"), by and through its undersigned attorneys, submit the following trial brief:

**I.    INTRODUCTION**

On October 19, 2004, the parties submitted the Third Amended Joint Pretrial Memorandum. Since that submission, the Seventh Circuit decided two landmark FCRA cases which significantly impact plaintiff's claims with respect to damages and liability: Wantz v. Experian Info. Solutions, 386 F.3d 829 (7th Cir. 2004) (decided October 21, 2004); Sarver v. Experian Info. Solutions, 390 F.3d 969 (7th Cir. 2004) (decided December 1, 2004). Wantz and Sarver are consistent with the law of the Second Circuit in every respect (See discussion of Casella and Podell, *infra*.) and further demonstrate that Plaintiff can not sustain an FCRA cause of action against Trans Union. For the Court's convenience, the instant submission contains all of the arguments made in paragraph 7 of the Third Amended Pretrial, as supplemented by Wantz and Sarver.

## II.    ARGUMENT

Trans Union is a consumer reporting agency as defined by the FCRA. Plaintiff claims that Trans Union violated the FCRA by negligently reporting (§1681e(b)) and later reinvestigating (§1681i) a fraudulent "Zale" account on her credit report. Plaintiff's instant counsel made a single dispute to Trans Union regarding the content of plaintiff's Trans Union report in or about October 2001. While there were other derogatory accounts on plaintiff's file, the complaint in the instant action concerns the Zale account only. (The other accounts were deleted by Trans Union after her single dispute. Those other creditors are defendants in the related action, Ahern v. Equifax, Capital One, Cross Country Bank, First Union Bank and Associates Bank, (No. 01-CV-2309), pending before Judge Eginton.) This is not a "mixed file" case where information belonging to someone with a similar name appeared on plaintiff's file. Instead, the criminal used plaintiff's personal identifiers including her social security number to open credit accounts which were then reported to Trans Union as if they belonged to plaintiff.

Plaintiff also claims that Trans Union furnished information to credit grantors, including Chase Manhattan Bank, "even though none had a permissible purpose." (Complaint, para. 11) This allegation is most curious because plaintiff's sole actual damages claim is that: "Denials include 'Toys'R'Us' Visa Gold Card from **Chase** in June 2000. (See Plaintiff's Answer to Trans Union's Interrogatory, No. 11.)(For the reasons set forth below, this pre-dispute claim is legally defective as well.) Plaintiff denies medical treatment. (See Plaintiff's Answer to Interrogatory 15)

Finally, plaintiff also claims that she is entitled to punitive damages because Trans Union's "conduct was willful." Complaint, paragraph 20. Plaintiff has not deposed a single Trans Union witness. Plaintiff has not presented any evidence of willfulness and relies almost entirely

upon attorney argument and characterization of Trans Union's manuals. Plaintiff's FCRA claims fail because she cannot prove the elements of her claims.

A.  §1681e(b)

The FCRA requires consumer reporting agencies "to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." The FCRA, however, is not a strict liability statute. Cahlin v. General Motors Acceptance Corp., 936 F.2d 1151, 1156 (11th Cir. 1991). The reporting of inaccurate information alone does not establish a claim. The elements of a negligent §1681e(b) claim are well-established:

> (1) the consumer reporting agency was negligent in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; **(3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury.**

Whelan v. Trans Union Corp., 862 F. Supp. 24, 829 (E.D. NY 1994) (*emphasis supplied*). See also Philbin v. Trans Union Corp., 101 F.3d 957, 963 (3rd Cir. 1996); Cahlin, *supra* 936 F.2d at 1160-1161.

Plaintiff cannot meet her burden of proof on any of these elements. Plaintiff has not identified a credit grantor witness which was furnished an allegedly inaccurate Trans Union report, or a person competent to testify that such a report was used in a credit eligibility determination. See Crabill v. Trans Union, LLC, 259 F3d. 62, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages,' which is one of the remedies under the Fair

Credit Reporting Act."; Cahlin, *supra*, 936 F.2d at 1161, "plaintiff bears the burden of proving that [the defendant's] credit report was a causal factor in the denial of his residential mortgage.")

In Wantz, *supra*, plaintiff sought damages from Experian, the defendant consumer reporting agency, alleging violations of FCRA §1681e(b) and §1681i; plaintiff's emotional distress claim was that "it is 'mentally and emotionally distressful when dealing with credit reporting agencies'" *Id.* at 833.  The district court granted summary judgment in favor of Experian because "the record [was] devoid of any indication that a potential creditor denied Wantz credit because of what Experian reported." *Id.* at 833. The Seventh Circuit affirmed, holding that a claim for emotional distress can only be based on an inaccurate consumer report furnished to a third party:

> [T]he [FCRA] requires consumer reporting agencies to follow "reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the [consumer] report relates." *15 U.S.C. § 1681e(b)*. Thus, without a consumer report, there is no duty under the Act to follow reasonable procedures. *See Smith v. First Nat'l Bank of Atlanta, 837 F.2d 1575, 1578 (11th Cir. 1988)* (reasoning that there can be no liability where there is no consumer report). 386 F.3d at 833

The Seventh Circuit held that where emotional distress damages are claimed, there must be sufficient detail of that injury for it to be legally cognizable:

> Where, as here, the plaintiff's own testimony is his only evidence of emotional damages, he must explain the circumstances of his injury in reasonable detail and not rely on conclusory statements, unless the facts underlying the case are so inherently degrading that it would be reasonable to infer that a person would suffer emotional distress from the defendant's action.  386 F.3d at 834 (*citation, quotation marks omitted*)

That cogent opinion is entirely consistent with Casella v. Equifax Credit Reporting Services, 56 F.3d 469, 474 (2nd Cir. 1995), *cert denied* 116 S.Ct. 1452, 134 L.Ed.2d

571 (1996)(there, plaintiff's claim "boil[ed] down to the bare contention that he is entitled to damages for pain and suffering simply because he knew of an inaccurate and potentially damaging item in his credit report." 56 F.3d at 475. The Second Circuit rejected that contention and held:

> we do not believe a plaintiff can recover for pain and suffering when he has failed to show that any credit grantor or other person ever learned of the derogatory information from a credit reporting agency. Id.)

Here, Plaintiff's meager proofs will be her own self-serving and conclusory testimony. She will not be entitled to damages for any alleged pecuniary loss or emotional distress.

Plaintiff is also unable to meet the first Whelan element that Trans Union negligently failed to follow reasonable procedures, because Trans Union is entitled to report information from reliable sources, at least until Trans Union had notice from Plaintiff that she disputed the accuracy of the entry. Casella v. Equifax Credit Reporting Services, 56 F.3d 469, 474 (2nd Cir. 1995), *cert denied* 116 S.Ct. 1452, 134 L.Ed.2d 571 (1996) (*See also*, Podell v. Citicorp Diners Club, 112 F.3d 98, 105 (2nd Cir. 1997) and Whelan, *supra.* Moreover, here there is no report of disputed information in connection with an eligibility determination or other circumstance which caused plaintiff cognizable harm.

In Sarver v. Experian Info. Solutions, 390 F.3d 969 (7th Cir. 2004), the plaintiff claimed Experian violated 1681e(b) because his Experian credit file contained an adverse entry which belonged to a different Lloyd Sarver. Before Sarver disputed credit information to Experian, he was denied an application for a credit card. The Court held:

> We found in *Henson* [*v. CSC Credit Servs., 29 F.3d 280 (7th Cir. 1994)*] a consumer reporting agency was not liable, as a matter of law, for reporting information from a judgment docket unless there

was prior notice from the consumer that the information might be inaccurate. We said that a

> contrary rule of law would require credit reporting agencies to go beyond the face of numerous court records to determine whether they correctly report the outcome of the underlying action. Such a rule would also require credit reporting agencies to engage in background research which would substantially increase the cost of their services. In turn, they would be forced to pass on the increased costs to their customers and ultimately to the individual consumer.

> *Henson, 29 F.3d at 285*. The same could be said for records from financial institutions. As we said, in his affidavit Mr. Browne proclaims, and there is nothing in the record to make us doubt his statement, that lenders report many millions of accounts to Experian daily. Sarver's report, dated August 26, 2002, contains entries from six different lenders. The increased cost to Experian to examine each of these entries individually would be enormous. We find that as a matter of law there is nothing in this record to show that Experian's procedures are unreasonable.

290 F.3d at 972-973. This is entirely consistent with Casella, *supra*, where the Court of Appeals held: "Prior to being notified by a consumer, a credit reporting agency generally has no duty to reinvestigate credit information." 56 F.3d at 454.

Here, Trans Union had no notice or knowledge that the Zales account did not belong to Plaintiff. Simply put, plaintiff cannot prove the essential elements of her FCRA claim that Trans Union negligently failed to follow reasonable procedures to assure maximum possible accuracy or caused her any cognizable harm.

    B.    §1681i

Plaintiff's second claim is that Trans Union failed to perform reasonable reinvestigation of her dispute of the Zale account (the other accounts were deleted). Plaintiff's attorney made a single dispute to Trans Union on October 19, 2001, fifteen months after Trans Union sent

plaintiff the July 19, 2000 copy of her report. The dispute referenced several accounts, four of which were on plaintiff's file on October 2001: ANBCC, Capital 1 Bank and FUNB Recovery and the Zale Account. (The July 19, 2000 disclosure contained the ANBCC, Capital 1 Bank and FUNB Recovery tradelines, but not the Zale Account.) It is not clear why plaintiff's attorney disputed the Zale account which was not on the file in plaintiff's possession before the dispute. It is not disputed that Trans Union responded to plaintiff's dispute by deleting three of the tradelines and verifying the fourth, the Zale Account. Trans Union thereafter sent plaintiff the November 9, 2001 disclosure which provided her the results of the reinvestigation and all of her FCRA rights. As such, Trans Union complied fully with its FCRA §1681i obligations. Podell v. Citicorp Diner's Club, Trans Union, et al., 112 F.3d 98, 100 (2nd Cir. 1997).

In Sarver, *supra*, the plaintiff claimed Experian violated §1681i because when the plaintiff disputed information to it, it requested the plaintiff provide a Social Security number before it could begin a reinvestigation. Instead, the plaintiff sued. The Court of Appeals affirmed summary judgment on the §1681i claim, the Court did not reach the issue of whether Experian's conduct conformed to the reinvestigation requirements, holding that it was unnecessary to do so:

> Sarver also does not show that he suffered pecuniary damages between August 29 (when he notified Experian of the error) and February 20, 2003 (when the Cross Country account was removed from his file). He does not claim that he applied for credit during that time period or that a third party looked at his report. In addition, his claim for emotional distress fails. We have maintained a strict standard for a finding of emotional damage because they are so easy to manufacture…. We have required that when the injured party's own testimony is the only proof of emotional damages, he must explain the circumstances of his injury in reasonable detail; he cannot rely on mere conclusory statements…. Finally, to obtain statutory damages under *FCRA § 1681n(a)*, Sarver must show that Experian willfully violated the

>Act. There is similarly no evidence of willfulness. Summary judgment was properly granted on this claim.

390 F.3d at 971 (*internal citations, quotations marks omitted.*)

Here, plaintiff's claims suffer the same flaws deemed fatal in <u>Sarver</u> and <u>Wantz</u>, Plaintiff's consumer report was not furnished to a third party in connection with an eligibility determination after her single dispute, no FCRA §1681e(b) or §1681i. Therefore, no cause of action can be established.[1]

**C.     Cloaking**

Plaintiff has essentially manufactured a contention that Trans Union's procedure of "cloaking," instead of "deleting" accounts, violates FCRA §1681i. Cloaking is Trans Union's internal nomenclature to describe the FCRA required process by which a disputed account is permanently removed from reporting to the consumer or any third party, but remains suppressed in the database. To the world outside Trans Union, the disputed account is permanently deleted. As explained in Trans Union's manuals "Cloaking prevents items from reappearing on the file in the event that subscribers fail to correct their automated tapes." (Emphasis supplied.) In 2001, when plaintiff's disputed items were "cloaked", the FCRA contained a requirement that consumer reporting agencies maintain reasonable procedures to prevent the reappearance of information deleted pursuant to §1681i(a)(5). See §1681i(a)(5)(C). "Cloaking" is Trans Union's procedure and it was 100% effective with respect to all accounts deleted from Plaintiff's file. The procedure effectively prevents the account from being re-reported because the suppression

---

[1] Plaintiff's actual damages claim is the confused assertion that she was denied a Visa Card by Chase in June 2000. This claim fails for two reasons. First, it is entirely inconsistent with the allegation of her complaint that Chase did not have a "permissible purpose" to review her consumer report. (Complaint, para. 11) As such, she cannot claim that the denial of an application which she did not make caused her harm. (After the lawsuit, and in reliance upon that allegation, Trans Union deleted the Chase inquiry from plaintiff's Trans Union file.) Second, she failed to demonstrate why the application was allegedly denied.

process traps subsequent reporting by the credit grantor. (Often a credit grantor will not remove the disputed account from its monthly automated tapes furnished to Trans Union; the cloak suppression defeats the subsequent tapes. FCRA §1681i) Significantly, the new 2004 FCRA amendments attacked identify theft with a newly codified a requirement that all consumer reporting agencies use a system to block the re-reporting of previously deleted accounts. The pertinent provision is as follows:

> **§ 605B. Block of information resulting from identity theft** [15 U.S.C. §1681c-2]
>
> (a) Block. Except as otherwise provided in this section, a consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of- [specified evidence]

Trans Union respectfully submits that the new express "block" requirement is, effectively, cloaking. As such, plaintiff's irrational assertion that cloaking is a concealment which supports willfulness for punitive damages is absurd and should be disregarded. Here, the contention related to "cloaking" makes little sense because she does not allege that any accounts were deleted and later re-appeared in her Trans Union report (and it is undisputed they did not).

### D. Statutory and Punitive Damages

While Plaintiff fails to connect any compensatory damages to her claims, she seeks statutory damages of $100.00 to $1,000.00 because she claims Trans Union acted willfully and deliberately to violate her rights. Plaintiff did not retain an expert or depose a Trans Union witness to support these claims. Because Trans Union followed its procedures and deleted three of the four disputed accounts and never reported (or re-reported) the Zale account after the single dispute, plaintiff cannot meet even the most generous definition of punitive damages and cannot

present evidence sufficient to go to the jury on her willfulness or punitive damages claims. *See* Casella, *supra* 56 F.3d at 476; Cousin v. Trans Union Corp., 246 F.3d 359, 371 (5th Cir. 2001), *cert denied*; and Philbin, *supra* 101 F.3d at 970.

### III.    CONCLUSION

For all of the above reasons and authorities, Plaintiff will be unable to meet her burden on any claim against Trans Union.

Respectfully Submitted,

_____
BRUCE S. LUCKMAN (ct 10830)
KOGAN, TRICHON & WERTHEIMER P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-688

*Local Counsel:*
Ira W. Bloom, Esq. (ct 07629)
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Ave., P.O. Box 777
Westport, CT 06881-0777
(203) 227-9545; Fax: (203) 226-1641
email: ibloom@wsdb.com
*Counsel for Defendant, Trans Union LLC*