UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

CARLEEN AHERN

v.

TRANS UNION LLC
ZALE CORPORATION

301cv02313 (RNC)
DATED: March 3, 2005

**TRANS UNION LLC'S CORRECTED SECOND MOTION IN LIMINE
REGARDING ANTICIPATED EVIDENTIARY PROBLEMS**

Defendant, Trans Union LLC ("Trans Union") states as follows in support of its motion *In Limine* regarding materials Plaintiff has included in her untimely Exhibit Book and other Exhibits which are irrelevant or were previously excluded by the Honorable Dominic Squatrito:

**1. Exhibit "6" Should Be Excluded At Trial:**

This action was previously set for trial in 2003 and discovery long ago expired. Pursuant to this Court's June 2, 2004 Order (Dkt#120), Trans Union served its Trial Exhibit Book on September 30, 2004. After repeated requests, Plaintiff finally served her Exhibit Book on February 17, 2005. For the following reasons, Plaintiff's Exhibit "6", random pages of irrelevant testimony of a non-party, should be barred from evidence at the trial of this claim.

Exhibit "6" consists of random pages of trial testimony from a July 2000 action captioned Carolyn Herbert v. Monterey Financial Services); the actual testimony is of a Ms. Burns, an employee of another non-party, Credit Bureau of Connecticut. Trans Union was not a party to the action nor represented by counsel at that bench trial.

Plaintiff should be barred from presenting the random portions of the transcript because Trans Union was not a party to the action and never had a chance to examine the

1

witness. (Because the entire transcript has not been produced Trans Union is even prevented from using whatever cross-examination was conducted by the parties to that action.) Therefore the transcript is irrelevant and inadmissible. Further, plaintiff failed to timely produce the document in discovery. Finally, even if the transcript were admissible at some level, plaintiff failed to timely designate portions of the transcript to be used pursuant to federal rules to allow Trans Union to prepare objections or rebuttal.

In any event, the random pages proposed are confusing, irrelevant and internally inconsistent and refer to materials which were not included. Because most of the testimony and all of the exhibits are missing, the transcript is very likely to confuse the jury and have no probative value, all to Trans Union's great prejudice. Importantly, the testimony produced makes clear that Ms. Burns confused herself and the court regarding the Connecticut Credit Bureau's former relationship with Trans Union. She alternatively claimed "we're an employee of Trans Union'; "we have a lease"; "we're an affiliate" and there was an "agreement" (not described or attached). See Exhibit "6", pp. 39-41 (Judge Thompson at one point acknowledged "Now I'm a little confused. I thought you were from the Credit Bureau of Connecticut." The Witness: "We're associated" (Exhibit "6", p 39). When pressed by Judge Thompson, the witness confirmed she was subpoenaed "regarding information we had at the time in '96 **for the Credit Bureau of Connecticut**." (Emphasis supplied) The missing exhibits about which the witness testified were (apparently) reports issued by the Connecticut Credit Bureau. *Id* at 40.)

Without an opportunity to test whether the witness was even competent or knowledgeable about the "relationship" between Trans Union and the Connecticut Credit Bureau, much less cross-examine her on issues relevant to **this** case, Trans Union will be

unfairly prejudiced by the confusing and incomplete transcript which plaintiff has untimely produced.  (Curiously, even in that case, neither party expected "Ms. Burns" to testify.  (See Exhibit "6", p. 34: Ms. Faulkner:  "That's correct.  I came in and I saw Ms. Burns, who I also know, and I asked her why "Ms. Kuchta" was not here.")

Because the Connecticut Credit Bureau is within the subpoena power of this Court, there is absolutely no basis to subject Trans Union to the unfair prejudice which will result if the confusing transcript is allowed.  Accordingly, Plaintiff should be precluded from presenting the transcript at trial.

**2. Plaintiff should be barred from introducing Exhibit "20", an irrelevant post-litigation communication respecting the fraud perpetrator and an account long ago deleted from Plaintiff's report.**

Plaintiff's Exhibit "20" is an Automated Consumer Dispute Verification ("ACDV") respecting a First Union Bank collection account ("FUNB Recovery") which Trans Union duly deleted from plaintiff's file upon receipt of her single dispute.  ACDVs are automated forms exchanged between consumer reporting agencies such as Trans Union and information furnishers to resolve disputes conveyed by consumers.  Exhibit "20" appears to be an ACDV which plaintiff procured from First Union, apparently with an *ex parte* subpoena[1].  The ACDV is dated January 2002, **after** this action was filed and three months after Trans Union deleted the account.  (The ACDV suggests the account is associated with the fraud perpetrators last name and a Hartford address.)

The parties Stipulation establish that the First Union account was deleted from plaintiff's report in November 2001.  See Stipulations 15 and 17 and plaintiff's Exhibit

---

[1] Plaintiff never served the subpoena on Trans Union or actually "produced" the ACDV in discovery. Instead, the document was simply attached to her summary judgment papers without competent affidavit or declaration.

3

"17", her November 9, 2001 with the deletion noted. Because the ACDV document was created **after** Trans Union timely deleted the fraudulent First Union account from **plaintiff's** file, Exhibit "20" is entirely irrelevant to plaintiff's claims and Trans Union's defenses and will only serve to confuse the jury.

Finally, prior to plaintiff's production of her Exhibits last week, Trans Union did not know Exhibit "20" was actually this post litigation ACDV and therefore did not object earlier. Plaintiff identified the document in the Pretrial simply as "TU ACDV TO FUNB". Trans Union believed that document referred to the November 2001 reinvestigation materials related to *plaintiff's* dispute of a First Union account and produced by Trans Union in this action. (See Trans Union's Trial Exhibit "14") Now that the document is in hand and its identity known, Trans Union has interposed the instant objection. Plaintiff's Exhibit "20" is inadmissible hearsay which will only serve to confuse the jury because it concerns a post litigation communication of an item which plaintiff concedes was duly deleted from her report prior to the creation of this new document. Trans Union will likely be prejudiced by the irrelevant and confusing nature of the document as the jury may believe the account somehow remained on **plaintiff's** file. Because of the absence of any connection between plaintiff's claims and the post litigation (post deletion) document, the document has no probative value and should be barred.

2. **Exhibits "23", "24", and "24A", were previously precluded by Judge Squatrito at the First Final Pretrial on December 22, 2003**

On December 22, 2003, Judge Squatrito held the first Final Pretrial in this action and granted, in part, Trans Union's Motions in Limine to preclude plaintiff's irrelevant

4

and hearsay Exhibits in the form of AP newspaper articles (Exhibit "23") and two Orders, a 1983 FTC Decision and Order Exhibit "24" and a 1992 Consent Order "24A". (The court withheld further orders on the motions in limine pending another hearing.) Notwithstanding, plaintiff has attempted to insert these entirely irrelevant documents in her Trial Exhibit Book. Accordingly, plaintiff should be precluded from presenting Exhibits 23, 24 and 24A or testimony or argument respecting the content thereof, at trial.

   3. **The Chase Denial Letter, Exhibit "7" Should be barred because Plaintiff Withdrew the Claim and the Event was Pre-Dispute in any event.**

Plaintiff's Exhibit "7" is a July 2, 2000 letter from Chase to plaintiff denying a "toys 'R' Us" Visa application. As set forth in Trans Union's Pretrial objections, the Chase letter and any testimony respecting the letter or transaction ought to be barred at trial because plaintiff withdrew the claim and the event occurred before plaintiff's dispute to Trans Union in any event. First, plaintiff's counsel withdrew the "Chase claim" in a letter to Trans Union's counsel dated April 29, 2003:

> page 4 per my previous emails, we have dropped the Chase claim. You can take it out of your Statement of the case.

(See Exhibit "A" hereto)

The withdrawal was confirmed again in an email on October 16, 2003. (Exhibit "B" hereto) The withdrawal of the claim was not surprising given the fact that plaintiff's original Complaint alleged that the Chase inquiry was an impermissible access to plaintiff's file (para. 11), yet her discovery suggested the "denial" was an element of her damages. In any event, the Chase transaction occurred over one year before plaintiff made a dispute to Trans Union and is therefore not relevant or a cognizable harm. (See discussion in Trial Brief, pp. 3-6.) Thus, plaintiff's withdrawal of the claim should be

enforced.

### (a) Plaintiff's Exhibits "2", "3", "4" and "5" Connecticut Credit Bureau Documents Should Be Precluded From Trial as Entirely Irrelevant Non-Party Documents

Even if plaintiff had not withdrawn the Chase transaction, Trans Union is entitled to have the evidence barred at trial because the event occurred in June 2000, over 15 months before plaintiff's single dispute to Trans Union in October 2001. There is no dispute that plaintiff's sole communication with **Trans Union** was her lawyer's letter dated October 20, 2001, sent to Trans Union's consumer relations center in Pennsylvania.[2] Because of the dramatic delay between the disclosure of Trans Union's report to plaintiff in July 2000 and the October 2001 dispute (during which time no harm occurred), plaintiff has sought to construct "notice" to Trans Union as a result of her 1996 and 1999 communications with **the Connecticut Credit Bureau**. That effort should be rejected. Connecticut Credit Bureau owned plaintiff's file (and all Connecticut consumer files) from 1974 until January 2000. Plaintiff correctly communicated her disputes to that

---

[2] Plaintiff's Response to Trans Union's Interrogatory 8 establishes that there was only one communication to Trans Union:

> 8. Do you contend that you or your agents or attorneys, at any time, notified Trans Union orally or in writing that your Consumer Report or File contained an inaccuracy, error, and/or incorrect information?
> If your answer is anything but an unqualified "no":
>   a) describe in detail the nature of the alleged inaccuracy, error, or incorrect information;
>   b) state the date and method of such notification;
>   c) identify the person who communicated such notification and the Trans Union employee to whom the notification was made; and
>   d) identify all documents which refer to the facts or information provided in your answers to subparts a - c above, including all documents which demonstrate or establish that the alleged information was/is inaccurate.
>
> "RESPONSE: Objection, overbroad as to time period; premature contention interrogatory. **Yes. See TU's records requested in discovery.**" (emphasis supplied)

The October 20, 2001 letter was the only document in Trans Union records and the only dispute letter in this case.

6

entity.  Plaintiff has not and cannot legally connect the Connecticut Credit Bureau to Trans Union.  (**If** plaintiff were to call a Connecticut Credit Bureau witness at trial, the testimony would confirm that the entities are and were entirely separate.)

Trans Union's Anticipated Discovery Issues, Paragraph "E", and its Pretrial Objections to plaintiff's Exhibits 2, 3, 4 and 5, establish that the letter and reports sent by the Connecticut Credit Bureau to plaintiff are entirely irrelevant hearsay and can only serve to confuse the jury.  Plaintiff's untimely Exhibit Book contains the documents and a review confirms that not one letter or report addressed to plaintiff contains a Trans Union logo or the words Trans Union.  Instead, the letters are each on "Credit Bureau of Connecticut, Consumer Relations Department" letterhead with that company's address, telephone and fax numbers.  (Exhibits 2 and 4)(Curiously, Plaintiff's Trial Book, Exhibit 4, contains four documents – three letters to plaintiff on Credit Bureau of Connecticut letterhead and one "notice" which is not dated or addressed to any particular consumer.  That single document contains a "TU" logo with "Serviced by Trans Union."  It is not clear when it was sent or to whom.)

Because Trans Union was not party or privy to such communications, the Exhibits ought to be barred at trial as inadmissible hearsay which is most likely to confuse the jury to Trans Union's great prejudice, with no probative value.

> **4. Plaintiff's Discovery Motion Dkt. 74 and Motion to Strike Dkt. 102 Were Denied Therefore Her Instant Objections to Trans Unions Exhibits 1 through 4 and 8 through 14 Should Be Overruled**

Plaintiff's Objections to Trans Union's Trial Exhibits 1 though 4 and 8 through 14 (Trans Union computer screen printout records) should be overruled because the basis of the objection re-asserts the very same arguments which were the subject of her

unsuccessful Motion for Discovery Orders, Dkt#74, denied in May 2003.[3]  That is, plaintiff wrongly claims that Trans Union failed to provide tables and codes which translate the various computer screen prints which Trans Union produced in its Initial Disclosures and discovery responses.  Plaintiff now objects that because Trans Union refused to "translate" documents "under oath," the documents should therefore be precluded at trial.

Trans Union's Memorandum in Opposition to plaintiff's Motion for Discovery Orders (DKT# 81) demonstrated that Trans Union duly furnished to plaintiff tables, brochures and manuals which "decode" the screen prints.  In fact, of the Exhibits to which plaintiff currently objects, **plaintiff identified at least five as plaintiff's** trial exhibits. (See plaintiff's Trial Exhibits 6, 12, 13, 15 and 18)

Trans Union did, in fact, provide the sought translations and its Initial Disclosures identified Ms. Terry as a person knowledgeable about Trans Union's communications with the credit furnishers with whom the computer communications were exchanged. Plaintiff could have deposed Ms. Terry, and Trans Union intends to present her testimony at trial regarding the materials.  Thus, there is and will be no prejudice to plaintiff and her objections should be overruled.

---

[3]

| 05/05/2003 | | ENDORSEMENT denying [74-1] motion for Discovery orders (signed by Judge Dominic J. Squatrito) (Grady, B.) (Entered: 05/06/2003) |

8

Respectfully Submitted,

_____
BRUCE S. LUCKMAN (ct 10830)
KOGAN, TRICHON & WERTHEIMER P.C.
1818 Market St., 30th Floor
Philadelphia, PA 19103
(215) 575-7600; Fax: (215) 575-688

*Local Counsel:*

Ira W. Bloom, Esq. (ct 07629)
WAKE, SEE, DIMES & BRYNICZKA
27 Imperial Ave., P.O. Box 777
Westport, CT 06881-0777
(203) 227-9545; Fax: (203) 226-1641
email: ibloom@wsdb.com

*Counsel for Defendant, Trans Union LLC*

9

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---

CARLEEN AHERN

                                             3: 01-CV-02313 (DJS)

v.

TRANS UNION LLC
ZALE CORPORATION

---

## CERTIFICATE OF SERVICE

Bruce S. Luckman, Esq., hereby certifies that he caused a true and correct copy of the foregoing Corrected Motion In Limine to be sent on this date, *via* FedEx, postage prepaid, to the following:

| | |
|---|---|
| Joanne S. Faulkner, Esq.<br>123 Avon St.<br>New Haven, CT 06511-2422<br>(203) 772-0395<br><br>*Counsel for Plaintiff* | Ian B. Lyngklip, Esq.<br>24500 Northwestern Hwy.<br>Suite 206<br>Southfield, MI 48075<br>(248) 746-3790<br><br>*Counsel for Plaintiff* |

                                                                                                     BRUCE S. LUCKMAN

DATED:      March 3, 2005